**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0840n.06**
**Filed: October 12, 2005**

**No. 04-3882**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DRITAN SHEHU, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM A FINAL ORDER OF |
| | ) | T H E   B O A R D   O F |
| ALBERTO GONZALES, Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before:  CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Dritan Shehu, a native and citizen of Albania, illegally entered the United States on January 12, 1999. On September 28, 1999, he was apprehended in Texas by the Immigration and Naturalization Service ("INS")[1] and charged with being present in the United States without being admitted or paroled, in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(I). Shehu conceded removability, but applied for asylum, the withholding of removal, and protection under the Convention Against Torture ("CAT"). His application was denied by an immigration judge ("IJ"), who determined that Shehu was ineligible for asylum because he failed to file his application within the statutory one-year deadline and otherwise failed to

---

[1]Now the Department of Homeland Security.

demonstrate extraordinary circumstances that excused the untimely filing. The IJ further found that Shehu did not qualify for withholding of removal or protection under the CAT. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision in all respects and dismissed Shehu's appeal. For the reasons set forth below, we deny Shehu's petition for review of the decision by the BIA.

I.

Shehu, who was born in 1974, is a member of a once prominent and wealthy landowning family who resided in Buz, a village in southern Albania. Following the Communist takeover of Albania in 1944, the family's land was confiscated under Albania's land redistribution policy, and petitioner's grandfather and other family members were imprisoned and mistreated by the Communist regime for protesting the expropriation of their land. After the fall of the Communist regime in 1990, Shehu's family sought the return of their property and, in 1991, joined the Republican Party, which was formed by other former landowners.[2] The Socialist government that assumed power, however, redistributed the land to political allies instead of the original owners, and most of his family's land went to members of the local commission. The Shehu family thus received only a small portion of land that had previously belonged to another family.

Shehu claimed that, as a result of their continued protestations, his family was threatened. Shehu testified that he and his younger brother became Republican Party "activists" (a status short of membership). Shehu stated in his affidavit that, in retaliation for his family's opposition to the

_____

[2]At the hearing, Shehu testified, at least initially, that some members of the family had joined a different Albanian party, the Democratic Party.

land redistribution, his house was ransacked and he and his brothers were "routinely and savagely beaten." At the hearing, however, he made no mention and gave no further explanation of these incidents. Instead, Shehu's testimony focused on four matters involving other family members that allegedly occurred in the late 1990's: the alleged kidnaping and beating of his uncle in 1994 by a high ranking government official; the 1995 kidnaping of his brother Irfan, a Republican Party organizer in Buz, who was threatened and told to stop his opposition to the land distribution; the subsequent kidnaping and disappearance of Irfan in 1997; and the robbery and beating of another brother in 2003 while visiting the family in Tirana. Shehu claimed that all of these incidents were retaliatory responses by local government officials to his family's attempts to secure their former properties.

Significantly however, Shehu had no first-hand knowledge of these alleged incidents, having left Albania for Greece in September 1992, when he was seventeen years old. Shehu lived and worked in Greece for the next six years. He occasionally visited his family in Albania, but returned for the last time in November 1997.[3] On his final visit to Albania, Shehu secured a passport and visa and then traveled to Mexico via Greece and Cuba. After arriving in Mexico, Shehu illegally crossed the Mexican border into Texas and stayed with a family until he was found and detained by INS officials in September 1999.

II.

---

[3]Petitioner's parents and sister still live in Albania; the family moved from Buz to Tirana in 1997.

We review issues of law de novo, subject to principles of deference with regard to an agency's construction of a statute that it administers.. *Csekinek v. I.N.S.*, 391 F.3d 819, 822, 829 (6th Cir. 2004). The factual findings of the BIA, including credibility determinations, are reviewed under the substantial evidence standard. *Sylla v. I.N.S.*, 388 F.3d 924, 925 (6th Cir. 2004); *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005); *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005). Under this highly deferential standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Sylla v. I.N.S.*, 388 F.3d at 925; *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). Reversal of a factual determination by the BIA is warranted only when we find that the evidence not only supports a contrary conclusion, but compels it. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004).

Shehu first challenges the BIA's affirmation of the IJ's determination that his failure to timely file his asylum application was not excused by "extraordinary circumstances." An asylum application must be filed within one year after the applicant enters the United States, 8 U.S.C. § 1158(a)(2)(B), unless the applicant demonstrates either that a later application is justified by changed circumstances that materially affected the applicant's eligibility for asylum, or extraordinary circumstances prevented the applicant from meeting the deadline. 8 U.S.C. § 1158(a)(2)(D). Although Shehu entered the United States on January 12, 1999, and did not file his asylum application until March 3, 2000, more than one year after the date of entry, he maintains that the immigration court's delay in processing his motion for a change of venue prevented him from complying with the filing deadline.

Notwithstanding Shehu's contentions, we have no discretion to determine whether the immigration court delayed his compliance with the filing deadline. The INA expressly provides that "[n]o court shall have jurisdiction to review any determination" regarding the existence of extraordinary circumstances that would excuse a failure to timely file an asylum application. 8 U.S.C. §1158(a)(3). Consequently, we are barred from reviewing the BIA's determination that Shehu failed to demonstrate extraordinary circumstances. *See, e.g.*, *Csekinek,* 391 F.3d at 824; *Gjyzi v. Ashcroft,* 386 F.3d 710, 714 (6th Cir. 2004); *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 544 (6th Cir. 2003).

III.

Shehu next challenges the IJ's exclusion of purportedly official documents from Albania pertaining to his family history, land ownership, verification as to membership in political parties, and a certificate from the Association of Formerly Politically Persecuted from the hearing because they were not authenticated in conformance with 8 C.F.R. § 287.6(b) (requiring an official publication or properly attested copy that is certified by a U.S. Foreign Services Officer stationed in the country where the record is kept). Shehu claims that the INS agreed to authenticate the documents pursuant to his request but failed to do so. Alternatively, Shehu argues that submitting the documents to the INS was "the only way to obtain proper authentication" and that "the burden was on the Service" to authenticate the documents.

A review of the record reveals that these documents did not conform to the requisite certification requirements and were therefore properly excluded as evidence. Although Shehu correctly argues that alternative means of authenticating records are allowed if it is not possible to

secure authentication from the proper authorities, *Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 532 (3d Cir. 2004), Shehu never raised the possibility of authentication by alternative means before either the IJ or the BIA. Thus, this issue is not properly before this Court. 8 U.S.C. § 1252(d)(1) (requiring the petitioner to first argue the claim before the IJ or the BIA before an appeal may be taken); *Csekinek*, 391 F.3d at 822. Moreover, Shehu cites no legal authority in support of his argument that the burden was on the INS to obtain proper authentication of the documents. In any event, his claim is belied by the rule itself, which specifies that copies of official publications are to be attested to by an officer of the foreign country authorized to do so, and his position is to be certified, where necessary, by a United States Foreign Service officer. 8 C.F.R. § 287.6. No intervention on the part of the INS was necessary or required under the circumstances, and, although Shehu's counsel sent the documents to government counsel prior to the hearing with a request for authentication, the record reflects, as the BIA found, that government counsel had not agreed to do so.

In a related argument, Shehu maintains that the IJ erred by refusing to consider documentary evidence written in Albanian and submitted with purported translations on the ground that the certificate of translation was inadequate. Pursuant to 8 C.F.R. § 1003.33, any foreign language document offered at an immigration hearing "shall be accompanied by an English language translation and a certification signed by the translator that must be printed legibly or typed." The "certification must include a statement that the translator is competent to translate the document, and that the translation is true and accurate to the best of the translator's abilities." *Id*.

At the hearing, the IJ correctly noted that only one of the documents submitted by Shehu complied with the regulation.  Most of the proffered documents were simply stamped with the translator's name and title "Translator," and the translator's initials or signature.  A few included a statement by a notary that the translator "masters both languages."  None of the documents, with one exception, bore the requisite certification by the translator, either as to his own competence or the accuracy of the translation.  Given that state department profile reports were submitted during the hearing concerning the proliferation of fraudulent Albanian documents, exclusion of the proffered exhibits was proper not only for want of certification as to translation and authenticity, but also on the additional ground cited by the IJ, who held that Shehu had not laid a proper foundation for the admission of the exhibits.

IV.

Shehu also asserts that his constitutional right to a full and fair hearing was violated during the proceedings before the IJ due to the translator's inability to properly and adequately translate his testimony.  However, since Shehu failed to complain about the translator's alleged deficiencies during the hearing, the BIA properly held that he waived any objection to the quality of the translation. *See Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005).  Moreover, "[t]o prevail on a due process challenge to deportation proceedings, [an alien] must show error and substantial prejudice.  A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings; we will simply not presume prejudice." *Id.* at 979 (internal citation and quotation marks omitted).  A review of the record belies Shehu's assertion that problems with

the translator existed or that the alleged faulty translation deprived Shehu of due process and improperly impacted the credibility determinations of the IJ.

V.

Shehu's remaining issues all pertain to the merits of the BIA's decision denying Shehu's claims for withholding of removal and relief under the CAT. Shehu challenges the IJ's findings, adopted by the BIA, that he was not a credible witness. Shehu argues that the IJ excessively relied on minor inconsistencies, which were attributable to a combination of poor translation and his inability to fully understand the questions posed to him by the IJ during the hearing. Shehu maintains that objective evidence existed to support his eligibility for relief.

Credibility determinations are considered findings of fact and are reviewed under the substantial evidence standard. *Sylla,* 388 F.3d at 925. Pursuant to this standard, credibility determinations are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 702-03. Although "an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. An adverse credibility finding must be based on issues that go to the heart of the applicant's claim." *Sylla,* 388 F.3d at 926 (internal citations and quotation marks omitted). As a general rule, discrepancies have no bearing on an applicant's credibility unless they serve to enhance the applicant's claim of persecution. *Id.* Nonetheless, the cumulative effect of minor inconsistencies can support adverse credibility findings. *Yu*, 364 F.3d at 704.

In this case, the IJ denied relief on the basis of Shehu's lack of credibility and corroboration. The IJ characterized Shehu's testimony as "nonresponsive, argumentative and less than forthright."

The IJ noted that, despite describing himself as a Republican Party activist, Shehu presented no proof that he was active in support of any political party. Furthermore, Shehu's residence in Greece from 1992 to 1998 "substantially undercut" his claim of such political activities. The IJ also noted numerous inconsistencies between Shehu's testimony at the hearing and his affidavit. There were inconsistencies regarding his alleged mistreatment and beatings by authorities while he was still in Albania, and pertaining to his and his family's political affiliations during the 1990's. There was no corroboration of his family's activities.

Moreover, the IJ noted that Shehu was out of the country from 1992 to 1997, he was not part of the land dispute, and he offered no statements from surviving family members regarding the alleged attacks by Albanian officials against family members in the 1990's. The IJ, citing a profile report indicating that organized crime was prevalent and active in Albania, found that no evidence existed to demonstrate that government officials were "in any way involved in these activities." The IJ found Shehu's account of the attack on his brother to be inconsistent and unreliable and noted that there was no evidence that Shehu's family ever sought the help of the government or even reported the attacks. The IJ characterized Shehu's testimony as "subjective speculation and conspiracy theorems relating to what he believes occurred." In short, the IJ concluded that the Shehu family difficulties arose from a local land dispute, and the only documents offered in this regard related to Shehu's mother's land interests.

The IJ also found that Shehu's credibility was further undermined by his vagueness regarding the details of his time spent in Mexico and Greece, and inconsistencies concerning his legal status in those countries. The record indicates that despite claims that he applied for asylum in Greece and

Mexico, Shehu was unable to produce any documentation regarding his status in either country. In particular, with respect to the issue of asylum in Mexico, the IJ found Shehu's loss of his passport and expulsion note to be suspicious, noting "a reasonable probability that [Shehu] may have been granted asylum in Mexico and purged himself of the very documents which would disprove this grant."

Given that these significant and substantiated inconsistencies go to the heart of Shehu's claims for relief, we conclude that substantial evidence supports the IJ's adverse credibility determinations. *Sylla*, 388 F.3d at 925-926.

Shehu next contends that the IJ erred in finding that he had "firmly resettled" either in Greece or Mexico. 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.15. Although the IJ mentioned the issue of firm resettlement in her decision as a factor mitigating against the grant of asylum, neither the IJ nor the BIA used resettlement as the basis for the denial of Shehu's asylum claim. Instead, as noted, Shehu's asylum application was denied because it was not timely filed pursuant to 8 U.S.C. § 1158(a)(2)(B). Thus, Shehu's argument in this regard is without merit.

Finally, Shehu petitions for review of the BIA's denial of his request for withholding of removal and protection under the CAT. Even if not entitled to asylum, an alien may secure withholding of removal if he can demonstrate that his "life or freedom would be threatened in that country [to which he would be sent] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The applicant must establish a "clear probability of persecution." *I.N.S. v. Stevic*, 467 U.S. 407, 413 (1984). This burden of proof is more stringent than that required to establish eligibility for asylum. *I.N.S. v.*

*Cardoza-Fonseca*, 480 U.S. 421, 431-432 (1987); *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). To establish a clear probability, the applicant must demonstrate that "it is more likely than not" that he or she will be persecuted upon return. 8 C.F.R. § 208.16(b)(2).

To be eligible for protection under the CAT, the applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture" is specifically defined under 8 C.F.R. § 208.18(a)(1) as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" for such purposes as obtaining a confession, punishment, intimidation, or any reason based on discrimination of any kind, "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *See also Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001). This Court will uphold the BIA's decision concerning withholding and the CAT unless it is manifestly contrary to law. *Castellano-Chacon*, 341 F.3d at 545, 552.

On the basis of the record set forth above, and particularly in light of the IJ's viable adverse credibility determinations, the BIA did not err in concluding that "notwithstanding earlier difficulties of his family with respect to a land dispute, [Shehu] has not demonstrated that he has experienced any past harm or that he now maintains a well-founded fear of either persecution on one of the five protected grounds, or torture at the hands of, or with the acquiescence of, the government, in Albania." This conclusion is supported by substantial evidence and is not manifestly contrary to law.

VI.

For the foregoing reasons, we deny Shehu's petition for review.