**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0743n.06
Filed: October 5, 2006

**No. 05-3952**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BLENDI XHAMXHI, also known as Govani Elvantore, | ) ) ) | |
| | ) | ON PETITION FOR REVIEW FROM THE |
| Petitioner-Appellant, | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO R. GONZALES, Attorney General of the United States, | ) ) | |
| | ) | |
| Respondent-Appellee. | | |

Before: GUY, GILMAN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Blendi Xhamxhi petitions the court to review the order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of Xhamxhi's application for asylum. Xhamxhi, a native Albanian and member of the Albanian Democratic Party, applied for asylum based on his claim of political persecution. The IJ denied the application after finding Xhamxhi not to be credible because Xhamxhi's hearing testimony contradicted his application, and the BIA affirmed. Xhamxhi now appeals, arguing that substantial evidence does not support the BIA's adverse credibility determination. For the following reasons, we deny the petition for review.

Xhamxhi arrived in the United States in June 2001 after traveling from Albania through Italy, Belgium, Spain, and the Netherlands. Upon his arrival in the United States, Xhamxhi was interviewed by an officer of the Immigration and Naturalization Service and referred to the immigration court. Xhamxhi thereafter filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. In his asylum application, Xhamxhi asserted that he and his family had suffered persecution as a result of their membership in the Albanian Democratic Party. Xhamxhi explained that his father was a founding member of the Democratic Party in his village and that Xhamxhi himself joined the youth forum of the Democratic Party in 1994 and performed propaganda work. In 1997, members of the Socialist Party won control of the government and began persecuting those affiliated with the Democratic Party.

Xhamxhi alleged in his application that he and members of his family were beaten, threatened, and arrested by police on several occasions and that supporters of the Socialist Party harassed them. Xhamxhi's application describes several incidents of alleged persecution. In June 1997, Xhamxhi's father was stopped by police officers and beaten while returning from a Democratic Party gathering and, in June 2000, Xhamxhi's father was attacked by masked men while working on his farm. In September 2000, four armed supporters of the Socialist Party appeared at Xhamxhi's house and threatened him and his mother with harm if they voted for the Democratic Party. On September 26, 2000, while Xhamxhi and two friends were posting flyers, four men—two masked officers and two men in suits—threatened and beat them. As a result, Xhamxhi spent seven days in bed and missed "one of the votes." In October 2000, officers stopped, threatened, and hit Xhamxhi while he was

protesting against allegedly manipulated elections. On December 10, 2000, Xhamxhi, his uncle, and others were stopped by masked officers after participating in a Democratic Party rally and Xhamxhi was taken to the police station, beaten, and held for two days without food. In late December 2000, Xhamxhi and his friends were "jumped" by masked officers, beaten, and held for one day. In February 2001, Xhamxhi became a full member of the Democratic Party, and two officers appeared at Xhamxhi's house and told his mother that the police chief wanted to question Xhamxhi regarding his anti-government activities. The officers told Xhamxhi's mother to tell Xhamxhi to go to the police station. Xhamxhi's mother later recounted the officers' visit to Xhamxhi and told him that he had to leave the country. Xhamxhi left Albania in March 2001. Xhamxhi asserts that, if he is forced to return to Albania, he will be arrested and possibly killed.

The IJ conducted a hearing regarding Xhamxhi's asylum application in January 2003. Xhamxhi testified through an interpreter. After Xhamxhi testified, the IJ excluded some evidence for lack of foundation because the evidence, consisting of letters from family and friends verifying Xhamxhi's story, had been submitted unaccompanied by envelopes or an explanation as to how Xhamxhi acquired them. The IJ then denied Xhamxhi's application, finding that it was "deliberately fabricated" and thus frivolous. The IJ denied Xhamxhi's application because she found Xhamxhi not to be credible. In particular, the IJ found that Xhamxhi's testimony conflicted with his asylum application and that he omitted events in both his application and when testifying. First, Xhamxhi stated in his application that the incident on September 26, 2000, involved four attackers—two dressed as police officers and two as civilians—but he testified later that there were only three

attackers, all wearing police clothing. The IJ noted that, on cross-examination, Xhamxhi failed to offer any explanation for this inconsistency. Second, Xhamxhi failed to mention at the hearing that he first suffered persecution in early September 2000, when members of the Socialist Party appeared at his house and threatened him and his mother. Although Xhamxhi stated on cross that he did not mention the incident because he was asked only when he had first been beaten, the IJ noted that counsel had asked Xhamxhi about the first incident without further qualification. Third, Xhamxhi failed to mention the October 2000 incident at the hearing. Finally, Xhamxhi testified that he and his friends were beaten at a rally in February 2001, but this incident was not mentioned in his asylum application. Xhamxhi later explained that he had in fact been speaking of the October 2000 incident.

In addition, the IJ noted several other inconsistencies that, "while not central to the asylum claim," were "particularly troubling." First, Xhamxhi testified that he had obtained his passport from his parents by mail but later stated that he had obtained it from his cousin. Second, a statement from Xhamxhi's father (a statement the IJ excluded) concerning the February 2001 incident failed to mention that officers had told Xhamxhi's mother that the chief of police wanted Xhamxhi for questioning. Third, Xhamxhi's testimony was inconsistent regarding whether it was his uncle or his cousin that lived in the United States, although Xhamxhi later explained that it was his father's cousin whom he called his "uncle." Fourth, according to the IJ, Xhamxhi stated in his application that his father was one of the founders of the Democratic Party in his village, but Xhamxhi later described his father's activities at the hearing as only helping out and doing propaganda. Fifth, Xhamxhi did not testify regarding the persecution of his father. Sixth, the IJ found Xhamxhi's testimony

inconsistent with the State Department's report and profile of Albania because, among other things, the report and profile noted that there were "few instances" of political persecution in Albania in 2001.

Finally, the IJ made two additional findings supporting her denial of asylum. First, Xhamxhi "failed to even address the possibility of internal relocation." Second, Xhamxhi "also failed to establish that his detentions for 48 or 24 hours were not as a result of lawful sanction." According to the IJ, it was reasonable to assume that at least one of Xhamxhi's arrests may have resulted from his attending a rally for which a permit was not obtained.

Xhamxhi appealed the IJ's decision to the BIA. The BIA held that the IJ erred by (1) relying upon inadmissible documents to impeach Xhamxhi's testimony, (2) finding Xhamxhi's use of "cousin" and "uncle" inconsistent, and (3) deeming Xhamxhi's application frivolous. However, the BIA concluded that the IJ's adverse credibility determination was not clearly erroneous. Specifically, the BIA held that the following inconsistencies supported the IJ's decision: (1) regarding the alleged attack on September 26, 2000, Xhamxhi offered differing descriptions of his attackers; (2) Xhamxhi failed to mention that he was a member of the Democratic Party during his initial airport interview; (3) Xhamxhi gave inconsistent testimony regarding how he received his passport; (4) Xhamxhi failed to testify regarding the persecution of his father; and (5) the State Department's profile of Albania contradicted Xhamxhi's story. The BIA did not address the IJ's findings that Xhamxhi had failed to establish that he could not have relocated within Albania or that his arrests were not lawful sanctions.

Xhamxhi now petitions this court to review the BIA's order, arguing that substantial evidence does not support the adverse credibility determination because it rested upon minor, irrelevant inconsistencies in Xhamxhi's testimony.

Because the BIA issued its own opinion rather than a summary affirmance or adoption of the IJ's findings, this court reviews the BIA opinion as the final agency determination. *Zaitona v. INS*, 9 F.3d 432, 434 (6th Cir. 1993). The factual findings of the BIA, including credibility determinations, are reviewed under the substantial evidence standard. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Under this highly deferential standard, findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Substantial evidence supports the BIA's adverse credibility determination because Xhamxhi's description of the attackers during the September 26 incident was inconsistent and Xhamxhi failed to offer a reasonable explanation for the inconsistency. While an adverse credibility determination is afforded substantial deference, the determination must be supported by specific reasons, must not be based on irrelevant inconsistencies, and must be based on issues that "go to the heart of" the applicant's claim.[1] *Sylla*, 388 F.3d at 926. Moreover, "[i]f discrepancies 'cannot be viewed as

---

[1]The Real ID Act of 2005 changes the standards governing credibility determinations, stating that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Pub. L. 109-13, div. B, § 101(a)(3), 119 Stat. 231, 303 (to be codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). This provision, however, only applies to aliens who applied for asylum, withholding of removal, or other relief after May 11, 2005, the effective date of the Act. *See id.* § 101(h)(2), 119 Stat. 231 at 305. As Xhamxhi applied for relief

attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'"

*Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004) (quoting *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000)).

In this case, the BIA's determination was proper because Xhamxhi provided inconsistent descriptions of the September 26 event. In his application, Xhamxhi stated that he was stopped by four men—two masked policemen and two men in suits—and beaten. At the merits hearing, however, Xhamxhi testified that three armed and masked people approached him. This inconsistency goes to the heart of Xhamxhi's claim because the September 26 incident was arguably the most severe incident of persecution to which Xhamxhi was subjected—he allegedly was beaten so badly that he had to spend seven days in bed—and it is hard to imagine that he would forget the number of attackers and what they were wearing. Moreover, Xhamxhi fails to offer any reasonable explanation for the inconsistency. Although he argues on appeal that he was questioned only as to who had attacked him rather than who was present, the record reveals that he in fact volunteered that he "saw three people approaching." Because Xhamxhi fails to offer a reasonable explanation for this inconsistency, an inconsistency central to his claim, and because we afford considerable deference to findings of the BIA, substantial evidence supports the BIA's adverse credibility determination. *See Gjelaj v. Gonzales*, No. 05-3204, 2006 U.S. App. LEXIS 11782, at \*11 (6th Cir. May 11, 2006) (unpublished) (denying a petition for review and concluding that substantial evidence supported the IJ's adverse credibility determination which was based, in part, on discrepancies between two asylum

from removal in 2001, this provision does not apply to our review of his claims.

applications and testimony regarding the description of an incident of alleged persecution); *Dosa v. Gonzales*, 143 Fed. Appx. 674, 676 (6th Cir. 2005) (unpublished) *(*holding that a reasonable adjudicator would not be compelled to find the petitioner credible because the petitioner's testimony and application were inconsistent regarding the name of a person with whom he had been arrested in his home country, and the petitioner could not explain the inconsistency). Because Xhamxhi provided inconsistent testimony regarding an incident of persecution without a reasonable explanation for the inconsistency, substantial evidence supports the BIA's adverse credibility determination.

The inconsistency regarding the September 26 incident is sufficient to support the BIA's adverse credibility determination. We therefore need not delve into whether the remaining inconsistencies and omissions were relevant, went to the heart of Xhamxhi's claim, or served to enhance his claims of persecution. Other circuits hold that a single inconsistency may support an adverse credibility finding. *See, e.g.*, *Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir. 2001); *Hasan v. U.S. Attorney Gen.*, No. 05-15749, 2006 U.S. App. LEXIS 12303, at *15 (11th Cir. May 18, 2006). The key inconsistency in this case involves the most serious incident alleged by Xhamxhi and, because we are reviewing under a highly deferential standard, the BIA's determination must be affirmed.

For the foregoing reasons, the petition for review is denied.