**NOT RECOMMENDED FOR PUBLICATION**
File Name: 08a0771n.06
Filed: December 18, 2008

**No. 08-3131**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


PE THET WIN,                                    **)**
                                                **)**
    *Plaintiff - Appellee,*              **)**     **ON APPEAL FROM THE BOARD OF**
                                                **)**     **IMMIGRATION APPEALS**
v.                                              **)**
                                                **)**
MICHAEL B. MUKASEY, Attorney General,           **)**
                                                **)**
    *Defendant - Appellant.*            **)**
                                                **)**


**BEFORE: COLE and COOK,  Circuit Judges; EDMUNDS,**[*] **District Judge**


    **EDMUNDS, District Judge.**    Petitioner, Pe Thet Win, is a citizen of Burma who seeks review of a decision by the Board of Immigration Appeals (BIA) upholding the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  The IJ denied Win's application for asylum, finding that he failed to show that he had applied for asylum within one year of his entry into the United States.  Alternatively, the IJ denied Win's claim for asylum because Win was found not to be

---

    [*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

credible. The IJ also denied Win's claims for withholding of removal under the Immigration and Naturalization Act (INA) and protection under the CAT based on an adverse credibility finding. Because this Court lacks jurisdiction to review Win's asylum application and substantial evidence supports the IJ's adverse credibility determination, we DENY the petition for review.

**I.**

Win is a 36-year old, single, male native and citizen of Burma. He claims that he suffered past persecution in Burma based on his political opinions, entered the United States through Seattle, Washington on May 11, 2001, and will suffer future persecution or torture if forced to return to Burma.

**A.      2002 Asylum Application**

Win's application for asylum, withholding of removal and protection under the CAT shows two date-received stamps: one for April 22, 2002 and the other for May 10, 2002. In it, Win claims that he had been arrested, persecuted, and abused in Burma on three separate occasions after taking part in political demonstrations and distributing pro-democracy literature.

The first arrest was on August 11, 1988. Win contends that he was detained for five days by the Military Intelligence (MI) people. During that detention, he was harshly interrogated under inhumane treatment. He was taken out of detention after his father bribed an MI officer. After being released, Win had to report to the MI office bi-weekly to confirm that he had not traveled to other parts of Burma.

Win was arrested again the following year, on August 8, 1989, when the MI rounded up and arrested those demonstrating on the first 8-8-88 anniversary. During his one-week detention, Win

2

claims that he was subjected to harsh interrogation and inhumane treatment. Once again, he was released after his father bribed an MI officer. After this, Win asserts that he was free to be involved in politics again. He was openly involved with the National League for Democracy (NLD), the political party he believed and still believes is the most qualified to restore democracy and human rights to Burma. Burma's military government allowed political parties to compete in the upcoming national elections to be held on May 27, 1990.

Although he remained politically active, and despite the arrest of NLD leaders, Win was not arrested again until almost seven years later on May 26, 1996. Win claims that his father was not so fortunate. Win's father joined a political demonstration, was subsequently arrested by the MI people, and tortured to death for endangering the state on April 30, 1995. In 1996, after his father's death, Win became more heavily involved in political activities, distributing leaflets and pamphlets to celebrate the sixth anniversary of the pro-democracy NLD national election victory.

On May 26, 1996, MI people caught Win distributing political materials, and he was arrested for destabilizing the country. Win was sent to Toungoo Prison. During his hard labor sentence at Bassein-Mandalay Construction Camp, Win claims that he was deprived of food, sleep, and hygiene supplies.

Win was released in 1997, after being in prison for one year. Before being released, Win claims that he was forced to sign a promissory note, agreeing not to be involved in politics anymore.

Despite his forced signature, Win continued to be involved with the pro-democracy and human rights movements in Burma. Because he was not highly educated, his activities involved distributing pamphlets and leaflets about convening a pro-democracy parliament. Many NLD

3

members were arrested in August 1998. Because Win feared arrest and jail, he fled Burma for a refugee camp in Thailand in September 1998.

Win remained in Thailand until August 2000; a period of almost two years. While in the Thailand refugee camp, Win contacted a broker who arranged to have him taken by ship to Seoul, South Korea. From September 2000 to March 2001, Win stayed at the Burmese Community Center for Burmese refugees located in Seoul, South Korea. He left Korea for the United States when someone there arranged for him to board a ship for America. Win claims that he arrived in Seattle, Washington on May 11, 2001, and continued on to Grand Rapids, Michigan. At the time he filed his asylum application, Win resided in Wyoming, Michigan.

Win fears that, if returned to Burma, he will be detained, tortured to death, cremated, and dumped without anyone in his family knowing why he has disappeared. Win bases his fears of future persecution on the facts that (1) his father was tortured to death for his political involvement in 1995; (2) on three separate occasions, Win himself had been accused, charged, arrested, interrogated, and severely mistreated in Burma; and (3) since his arrests, he has been on the MI's black list and closely watched.

Win believes that the MI acquired all his personal information when he was arrested in 1988, 1989, and 1996, and placed him on a black list and have earmarked him for arrest when and if something happens to destabilize the iron rule of the military.

B.    Removal Proceedings and IJ Decision

On June 13, 2002, the former Immigration and Naturalization Service (now the Department of Homeland Security), initiated removal proceedings against Win by issuing a Notice to Appear and

4

charging Win under Section 212(a)(6)(A)(i) of the INA, as amended, 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or an alien who has arrived in the United States at a time or place other than designated by the Attorney General.

Removal proceedings were held on several dates in 2002, 2005, and 2006. At the 2002 and 2005 proceedings, Win, who was represented by counsel, admitted the allegations of facts alleged against him, except for his date of entry into the United States, and conceded the charge of removability. The IJ informed Win that it would be his burden to establish the date of his entry into the United States, that the one-year bar was at issue, and that it was Win's burden to show exceptional circumstances so as to establish an exception to that one-year bar. Despite Win's counsel's request and the IJ's grant of permission to supplement Win's application for asylum, no supplement or amended application was filed.[1]

The IJ issued an oral decision and written order on March 28, 2006, denying Win's application for asylum, withholding of removal, and protection under the CAT, and ordered Win removed to Burma.

### 1. Asylum Claim

Win's asylum claim was denied on three alternative grounds. First, the IJ found that Win had not shown, by clear and convincing evidence, that he had first arrived in the United States on May 11, 2001 and thus had not shown that his application for asylum had been filed within one year of

---

[1]Two minor changes were made to the Win's application. First, the date political parties were allowed to compete in the upcoming Burma national election was changed from 1989 to 1988. Second, a correction was made to reflect Win was severely mistreated during his three arrests; not two.

the date he first arrived in the United States. Win had not argued or presented evidence that either changed or extraordinary circumstances caused him to miss the one-year deadline. Accordingly, the IJ concluded that Win was statutorily barred from obtaining the asylum relief he sought. 8 U.S.C. § 1158(a)(2)(B).

Second, the IJ concluded that, even if Win's asylum claim were not statutorily barred, it would be denied on the merits. Observing that an applicant for asylum must demonstrate that he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A), the IJ found that Win's claims of past persecution and fear of future persecution lacked credibility. Because he was found not to be a credible witness, the IJ concluded that Win had not shown that he was a "refugee" as defined by § 1101(a)(42)(A).

The IJ stated specific reasons in support of her adverse credibility finding, relying on (1) inconsistencies between Win's testimony and written application that were created by omissions in one or the other, (2) inconsistencies between Win's testimony and affirmative statements in his written application, (3) the lack of reasonable or plausible explanations for those inconsistencies and omissions, (4) the lack of corroborating evidence that was reasonably available to Win, and (5) corroborating evidence presented by Win that failed to support his claims of past persecution.

Lastly, the IJ concluded that, even if Win's asylum claim were not statutorily barred and he was found to be credible, his asylum claim would be denied on the merits for another reason. The relief of asylum is discretionary, and the IJ concluded that Win was not entitled to a favorable exercise of discretion because, among other reasons, Win had spent approximately two years in a

6

refugee camp in Thailand and six months in South Korea, both safe havens, but never requested asylum.

After providing reasons for denying Win's asylum claim, the IJ addressed Win's claims for withholding of removal under the INA and protection under the CAT.

### 2. Withholding of Removal Under INA

The IJ first observed that, unlike asylum, the grant of withholding of removal under Section 241(b)(3) of the INA is not discretionary. To obtain this relief, however, Win must show that it is "more likely than not" that he would be persecuted on one or more of the statutorily protected grounds. The IJ concluded that Win failed to meet that burden and denied his request for a grant of withholding of removal under the INA because Win was found not to be a credible witness.

The IJ also concluded that, even if Win was found to be credible, his claim for withholding of removal would be denied because Win had not shown "a clear probability" that he would be persecuted if he was removed to Burma. The IJ based this conclusion on the fact that (1) Win remained unharmed in Burma from August 1989 until May 26, 1996, a period of almost seven years, even though he admitted that he was politically active, and (2) Win remained unharmed in Burma from May 1997 until September 1998, even though Win continued his political activity in pro-democracy efforts in Burma, albeit more secretly than in the past.

### 3. Protection Under the CAT

Win's request for withholding of removal under the CAT was also denied based on the IJ's adverse credibility finding. The IJ also concluded that, even if found to be credible, Win's claim for protection under the CAT would be denied because Win had not shown that it was "more likely than

not" that he would suffer the torture he fears if removed to Burma. Citing *Castellano-Chacon v. INS*, 341 F.3d 533 (6th Cir. 2003), the IJ concluded that generalized descriptions of human rights violations in Country Condition Reports prepared by the State Department were insufficient to show that it is more likely than not that Win would be tortured for his political opinions if returned to Burma.

### C.  Appeal and BIA Decision

Win filed a timely appeal with the BIA. In a January 7, 2008 decision, the BIA found that the factual findings of the IJ were not clearly erroneous. It adopted and affirmed the IJ's decision denying Win's application for asylum, withholding of removal under the INA, and for protection under the CAT, and dismissed Win's appeal. Specifically, the BIA concluded that the IJ had correctly found that Win had not demonstrated by clear and convincing evidence that his asylum application was timely. The BIA next concluded that the IJ had adequately cited a basis for the adverse credibility finding, noting the major discrepancies between Win's testimony, his written application, and his corroborating evidence. As for Win's requests for withholding of removal under the INA and for protection under the CAT, the BIA affirmed the IJ's analysis and conclusion that Win had not demonstrated past persecution or a clear probability that he would be persecuted or that it was more likely than not that he would be tortured if removed to Burma. Finally, the BIA rejected Win's argument on appeal that he should have been in "Asylum Only" proceedings because Win conceded removability and the charge or nature of proceedings was not an issue in his removal hearings before the IJ. The BIA also concluded that Win failed to show that he was prejudiced under these circumstances.

## II.

Win's claims for asylum and withholding of removal are based on his alleged past persecution and fear of future persecution or torture in Burma for holding pro-democracy political opinions. His petition argues that (1) the BIA erred when it upheld the IJ's finding that Win was statutorily ineligible for asylum because he failed to timely file his application; (2) the BIA erred when it upheld the IJ's finding that he lacked credibility and thus denied his application for a grant of withholding of removal under the INA and for relief under the CAT; (3) as to Win's withholding of removal claim under the INA, the BIA erred when it upheld the IJ's alternative conclusion that Win had not met his burden of showing either past persecution or a clear probability that he would be persecuted if removed to Burma; (4) as to Win's request for relief under the CAT, the BIA erred when it upheld the IJ's alternative conclusion that Win had not met his burden of showing that it was more likely than not that he would be tortured if he was removed to Burma; and (5) the BIA erred when it determined that Win's argument -- that the proceedings below should have been "Asylum Only" proceedings because he entered the United States as a stowaway -- was waived when he conceded removability, did not challenge that charge or the nature of the proceedings below, and failed to show prejudice.

We begin with the government's argument that this Court lacks jurisdiction to review Win's asylum claim.

### A.    Jurisdiction to Review the Asylum Claim

The BIA upheld the IJ's finding that Win had not shown that his application for asylum was timely. The IJ found that Win had failed to provide clear and convincing evidence that his asylum

9

application was filed within one year of his arrival in the United States as required by 8 U.S.C. § 1158(a)(2)(B). The IJ also observed that Win did not argue or present evidence that there were changed or extraordinary circumstances that would have justified the IJ's consideration of his untimely application. *See* 8 U.S.C. § 1158(a)(2)(D). Likewise, Win did not raise any constitutional claims or matters of statutory construction, a factor that would have allowed this Court to exercise jurisdiction over his asylum claim. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).

Appellate review of asylum claims is statutorily limited. 8 U.S.C. § 1158(a)(3).[2] This Court recently observed that "§ 1158(a)(3) 'bar[s] our review of asylum applications denied for untimeliness . . . when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction.'" *Huang v. Mukasey*, 523 F.3d 640, 650 (6th Cir. 2008) (quoting *Almuhtaseb*, 453 F.3d at 748). Because Win's appeal does not seek review of constitutional claims or matters of statutory construction, this Court lacks jurisdiction to review the IJ's factual finding that Win's application was untimely.

**B.      Claim for Withholding of Removal Under the INA and the CAT**

Although this Court lacks jurisdiction to review Win's asylum claim, it does have jurisdiction over Win's appeal of the BIA's denial of his requests for withholding of removal under the INA and for protection under the CAT. *See Sall v. Gonzales*, 251 F. App'x 337, 339 (6th Cir. 2007) (citing *Castellano-Chacon*, 341 F.3d at 544-52). "Because the BIA adopted the IJ's decision, we review

---

[2]The statute provides that:

> No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).

8 U.S.C. § 1158(a)(3). Paragraph (2)(B) addresses the one-year time bar for asylum applications.

the IJ's decision directly." *Sall*, 251 F. App'x at 339 (citing *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)).

### 1. Alien's Burden of Proof

An alien can request the relief of a withholding of removal under both the INA, 8 U.S.C. § 1231(b)(3), and the CAT. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006). The alien's burden of proof under the INA and the CAT is different. "To qualify for withholding of removal under the INA, an applicant must establish that there is a 'clear probability' that if [he] were removed, [his] life or freedom would be threatened on account of political opinion or the other protected grounds listed in 8 U.S.C. § 1231(b)(3)(A)." *Xiao Ji Chen v. United States DOJ*, 434 F.3d 144, 155-56 (2d Cir. 2006). To show that there is a "clear probability," the applicant must show that "'it is more likely than not,' that [he] would be subject to persecution" on account of a statutorily protected ground if he was removed. *Almuhtaseb*, 453 F.3d at 749 (quoting *Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005)). "Evidence of past persecution creates 'a rebuttable presumption . . . that there is a clear probability of a future threat should the applicant be returned." *Xiao Ji Chen*, 434 F.3d at 156 (citing *Secaida-Rosales v. INS*, 331 F.3d 297, 306 (2d Cir. 2003) and 8 C.F.R. § 208.16(b)(1)). "By contrast, to be eligible for withholding of removal under the CAT," the applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Almuhtaseb*, 453 F.3d at 749 (internal quotation marks and citation omitted).

### 2. Standard of Review

"We review the BIA's decision on a request for withholding of removal under the same standard regardless of whether the request was made pursuant to the INA or the CAT. . . . We will

reverse the BIA's determination against withholding of removal if it is 'manifestly contrary to law.'" *Id.* at 749 (quoting 8 U.S.C. § 1252(b)(4)(C)). "To reverse the BIA's determination, we must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Id.* (internal quotation marks and citation omitted). As to factual findings, "[w]e defer to the administrative findings of fact except when 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

### 3. Adverse Credibility Determination

The IJ denied Win's claims for withholding of removal under the INA and the CAT based on a finding that his testimony about past persecution and fear of future persecution lacked credibility, thus precluding him from satisfying his burden of proof. This is the same reason the IJ determined that Win's claim for asylum would be denied even if it had been timely. The BIA held that the IJ's adverse credibility finding was not clearly erroneous because of the major discrepancies between Win's testimony, his written application, and his corroborating evidence. Win argues that the BIA erred when it affirmed the IJ's adverse credibility finding.

Credibility determinations are findings of fact reviewed under the substantial evidence standard. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). This is a highly deferential standard of review, requiring that "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Although highly deferential, "the determination must be supported by specific reasons, must not be based on irrelevant inconsistencies, and must be based on issues that 'go to the heart of' the applicant's claim." *Xhamxhi v. Gonzales*, 188 F. App'x 472, 475 (6th Cir.

12

2006) (quoting *Sylla*, 388 F.3d at 926). "If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004) (quoting *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000)).[3] Because the BIA adopted and affirmed the IJ's adverse credibility finding, we review the IJ's finding directly. *Yu*, 364 F.3d at 702.

Despite Win's arguments to the contrary, substantial evidence supports the IJ's finding that Win was not credible about his past persecution or his fear of future persecution. In this case, although a few of the inconsistencies identified by the IJ were irrelevant,[4] we conclude that a review of the record as a whole would not compel a reasonable adjudicator to conclude that Win was credible. *See Yu*, 364 F.3d at 702. Other inconsistencies that the IJ relied upon for her adverse credibility finding go to the heart of Win's claims of past persecution and fear of future persecution in Burma and can be viewed as attempts by him to enhance his claims of persecution.

First, Win testified that, after his August 1989 arrest, he was placed on a watch list, was required to report to the government authorities bi-weekly, and noticed military intelligence people

_____

[3]"The REAL ID Act of 2005, Pub.L. 109-13, 119 Stat. 231, changed the standard governing credibility determinations, stating that those determinations may be made without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim. This provision, however, applies only to those aliens who applied for asylum, withholding of removal, or other relief on or after May 11, 2005, the effective date of this provision of the Act. *Sall*, 251 F. App'x at 340, n.1 (internal quotation marks and citations omitted). Because Win applied for relief earlier than May 11, 2005, this provision of the REAL ID Act does not apply to this Court's review of his claims. *Id.*

[4]For example, the inconsistency between Win's testimony that he had no brothers and the statement about his "brothers" in his application for asylum does not go to the heart of Win's claims and thus cannot form a basis for the IJ's adverse credibility finding. "[M]inor and irrelevant inconsistencies cannot constitute the basis of an adverse credibility determination." *Sylla*, 388 F.3d at 926.

coming around his home. As the IJ noted, Win's application for asylum states otherwise, i.e., that after this August 1989 arrest, he was free to be involved in politics again. Additional record facts corroborate Win's written admission and undermine the credibility of his testimony about past persecution and fears of future persecution or torture in Burma. Despite his continued political activity, Win remained unharmed in Burma for almost seven years, the period between his alleged August 1989 and May 6, 1996 arrests. Win also testified that, although he continued his political activity in pro-democracy efforts in Burma, albeit more secretly than in the past, he remained unharmed in Burma from May 1997 until September 1998, when he left for Thailand. We have observed that this type of evidence indicates that the applicant's situation "was not sufficiently grave to constitute persecution." *Almuhtaseb*, 453 F.3d at 750 (citing cases).

The IJ's adverse credibility finding is further supported by omissions in the corroborating evidence Win presented and the lack of corroborating evidence reasonably available to Win. Although Win testified that NLD representative Aung Soe Myint was aware of his past three arrests, the letter from Myint that Win presented as corroborating evidence failed to mention any of those arrests. Similarly, although Win testified that his mother was aware of his three arrests and mistreatment and had let him know that the Burmese government authorities were still asking about his whereabouts, Win failed to obtain either an affidavit or statement from his mother acknowledging any of these facts despite her ability to provide him with other documents like his birth certificate and family certificates. His mother could have also corroborated Win's testimony about the circumstances of his father's death in 1995. IJ determinations regarding the availability of corroborating evidence are not to be reversed "unless the court finds . . . that a reasonable trier of fact

14

is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).[5]

There is nothing in the record that would compel a reasonable trier of fact to conclude that this corroborating evidence was unavailable. Accordingly, the IJ's determination cannot be reversed.

The above inconsistencies go to the heart of Win's claims for withholding of removal and are sufficient to support the IJ's adverse credibility determination. Thus, there is no need to address Win's additional arguments about other inconsistencies. *See Xhamxhi*, 188 F. App'x at 476 (observing that "[o]ther circuits hold that a single inconsistency may support an adverse credibility finding.").

Here, the IJ determined that, even if Win's asylum application had been timely, his request for asylum would be denied on the merits because he was found not to be credible and thus could not establish past persecution or a well-founded fear of future persecution. Because we conclude that the IJ's adverse credibility findings were sufficient "under the less stringent standards for petition of asylum, the IJ's findings were also sufficient to reject [Win]'s petition based on the more exacting standards used for withholding of removal and CAT." *Sall*, 251 F. App'x at 341 (citing *Hamida v. Gonzales*, 478 F.3d 734, 741-42 (6th Cir. 2007) and *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998)).

C.     **"Asylum only" claim.**

---

[5]The REAL ID Act of 2005 amended 8 U.S.C. § 1252(b)(4). This amended provision took effect on May 11, 2005, and, pursuant to § 101(h)(3) of the REAL ID Act, Pub. L. 109-13, Div. B, Title I, 119 Stat. at 305, applies to all cases where the final administrative order of removal is issued before, on, or after May 11, 2005. Accordingly, Win's appeal is governed by this standard.

15

The BIA determined that Win had waived the argument that he should have been in "Asylum Only" proceedings. Despite Win's arguments to the contrary, the BIA did not err. Win was charged, under Section 212(a)(6)(A)(i) of the INA, as amended, 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or as an alien who has arrived in the United States at a time or place other than designated by the Attorney General. The record reflects that Win conceded this charge of removability. Moreover, Win never complained to the IJ about this charge or the nature of his removal proceedings. Rather, he raised this challenge for the first time in his administrative appeal. Because Win failed to raise this argument before the IJ, the BIA correctly concluded that the argument was waived. *See Shehu v. Gonzales*, 151 F. App'x 437, 441-42 (6th Cir. 2005) (holding that, because the petitioner failed to complain about a translator's deficiencies during his removal proceedings, "the BIA properly held that he waived any objection to the quality of the translation.").

### III.

For the foregoing reasons, we DENY the petition for review.