# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4259

_____

|  |  |  |
|---|---|---|
| | * | |
| Wingert & Associates, Inc., | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Paramount Apparel International, Inc., | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 05-4387

_____

|  |  |  |
|---|---|---|
| | * | |
| Wingert & Associates, Inc., | * | |
| | * | Appeal from the United States |
| Plaintiff-Appellant, | * | District Court for the District |
| | * | of Minnesota. |
| v. | * | |
| | * | |
| Paramount Apparel International, Inc., | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: June 16, 2006
Filed: August 14, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

After Wingert & Associates, Inc. (Wingert) was terminated by Paramount International, Inc. (Paramount), Wingert brought this action for unjust enrichment, tortious interference with contract, and violation of the Minnesota Termination of Sales Representatives Act. The district court[1] dismissed the common law claims on summary judgment and held a jury trial on the statutory claim. The jury returned a verdict in favor of Wingert in the amount of $1,049,894, and the district court denied Paramount's motion for judgment notwithstanding the verdict, to vacate and amend the judgment, or for a new trial. Paramount appeals, and Wingert cross appeals the dismissal of its unjust enrichment claim. We affirm.

Wingert, a sales representative organization domiciled in Minnesota, entered into a verbal agreement in 1995 to be a sales representative for Paramount, a Missouri corporation which manufactures apparel and headwear. Under their agreement Wingert solicited wholesale orders for Paramount's golf headwear line, and Paramount payed Wingert a fifteen percent commission on the sales. The duration of the agreement was not specified. Wingert employed its own sales force, which consisted of at least twenty agents who received a ten percent commission on their sales, i.e. two thirds of the contract commission.

On December 13, 2002 Paramount sent Wingert a letter terminating the relationship effective December 16, 2002, but indicating it would pay commissions on sales through January 16, 2003. Paramount subsequently contacted eighteen of the agents working for Wingert and contracted directly with them for a twelve percent commission.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

-2-

The Minnesota Termination of Sales Representatives Act provides that a sales representative agreement of indefinite duration "shall be treated as if it were for a definite duration expiring 180 days after the giving of written notice" of termination. Minn. Stat. § 325E.37, subd. 3. When the agreement is terminated, the sales representative is "entitled to be paid for all sales as to which [it] would have been entitled to commissions pursuant to the provisions of the sales representative agreement, made prior to the ... end of the notification period." Minn. Stat. § 325E.37, subd. 4. Thus, a representative terminated without 180 days notice is entitled to commissions earned within 180 days of the termination. The statute also separately provides for an award of damages without a time limitation. See § 325E.37, subd. 5.

Wingert brought this diversity action against Paramount, asserting that Paramount's failure to give 180 days notice violated the Act and then amended its complaint to add claims of tortious interference with contract and unjust enrichment based on Paramount's hiring of its agents. Paramount filed an answer and an amended answer and later moved for summary judgment on the common law claims and for limiting Wingert's statutory claim for recovery to net commissions (five percent of sales) for the 180 days after its written notice of termination. The district court granted summary judgment on the non statutory claims but refused to limit the commissions.

One week before trial Paramount moved to amend its answer to include a defense based on Wingert's failure to enforce noncompete clauses against its agents. The district court denied the motion as untimely, but indicated that Paramount would be allowed to crossexamine Wingert about its failure to mitigate. It granted Wingert's motion in limine to exclude evidence of the noncompete agreements, including evidence of prior litigation to enforce such an agreement. Wingert's motion to exclude evidence of settlement negotiations was also granted. Despite Wingert's failure to include in its cause of action a request for damages beyond the statutory period, the

district court decided to allow limited testimony about lost profits beyond that six month period.

At trial Wingert introduced expert testimony from accountant Arthur Cobb concerning its damages. Cobb testified that the amount of Wingert's lost commissions during the 180 day period following Paramount's notice was approximately $228,366. He also testified over Paramount's objection that Wingert's lost profits for the next four and a half year period were approximately $821,000. Cobb explained that because Wingert had not received 180 days notice, it did not have sufficient agents to serve a new replacement line and could not arrange for replacements. During Cobb's testimony Wingert introduced a document that contained booking information on Paramount's headwear line. Paramount objected that it was a settlement document, but the court admitted it after redaction of a reference to settlement. Paramount unsuccessfully sought to introduce Cobb's expert report, but was able to question him about it.

Before closing arguments, Paramount requested judgment as a matter of law on the issue of damages beyond the 180 day notice period and based on insufficiency of the evidence of lost commissions. The motion was denied, and the jury found in favor of Wingert and awarded damages of $228,366 for failure to provide 180 days notice and $821,518 for damages beyond the 180 day period. Paramount filed a post trial motion requesting judgment in its favor on damages outside the 180 day period and asking the district court to vacate and amend the judgment on commissions during the 180 day period. In the alternative it requested a new trial. The district court denied the motion, and Paramount appeals, challenging the damages awarded and several evidentiary rulings. Wingert cross appealed the grant of summary judgment on its common law claims but has since limited its focus to the dismissal of its unjust enrichment claim.

On its appeal Paramount challenges both damage awards. It argues that the award for lost commissions during the statutory notice period should have been limited to Wingert's net loss of only five percent commissions (since the agents would have received ten percent). Judgment notwithstanding the verdict should have been granted for any damages beyond the 180 day notice period it claims because they are not authorized by the Act. In the alternative, Paramount requests a new trial so that it may introduce additional evidence. We review the district court's rulings under Rule 59(e) for abuse of discretion, Mathenia v. Delo, 99 F.3d 1476, 1480 (8th Cir. 1996), and the denial of judgment as a matter of law de novo. Keenan v. Computer Assocs. Int'l, Inc., 13 F.3d 1266, 1268 (8th Cir. 1994). We review questions of statutory interpretation de novo. Crane v. Sullivan, 993 F.2d 1335, 1336 (8th Cir. 1993).

The Act provides that the payment for sales during the 180 day notice period shall be "in accordance with the terms of the sales representative agreement". See Minn. Stat. § 325E.37, subd. 4. The agreement between Paramount and Wingert was for commissions of fifteen percent; under the language of the statute, Wingert is entitled to the full amount of those commissions. The district court did not abuse its discretion in overruling Paramount's objection to evidence regarding the gross commissions lost or in denying the motion to amend the judgment.

The award of damages beyond the notice period is supported by the plain language of the Act and Minnesota case law. The Act gives terminated sales representatives the option of arbitration or court action and specifies the available remedies in subdivision 5, which include "(2) reinstatement of the sales representative agreement, or damages; (3) payment of commissions due under subdivision 4; (4) reasonable attorneys' fees and costs to a prevailing sales representative". In this case, the jury award included both commissions under subdivision 4 in the amount of $228,366 and other damages in the form of lost profits for 4.5 years in the amount of $821,518. Subdivision 5 of the Act provides for damages in addition to commission

payments for the 180 day period under subdivision 4, and it does not limit the period for which such damages may be awarded. Paramount asserts that the Act does not permit future damages beyond the 180 day period allowed by subdivision 4. Such an interpretation of the statute effectively excises subdivision 5 and is therefore unreasonable. A statutory provision should not be interpreted to make other provisions meaningless or superfluous. See Cody v. Hillard, 304 F.3d 767, 776 (8th Cir. 2002).

The interpretation advocated by Wingert is consistent with the Minnesota Court of Appeals' decision in RIO/Bill Blass v. Bredeson Assocs., Inc., 1998 WL 27299 (Minn. Ct. App. Jan. 27, 1998), in which the court determined that "[n]othing in the language of the statute limits commissions due a sales representative under an agreement to those earned within the 180-day winding-up period." It upheld a damage award based on conduct approximately one year before termination. See id., 1998 WL 27299, at *1-*2. This interpretation by a Minnesota appellate court is helpful to our understanding even though it was issued in an unpublished and unprecedential opinion. See Minn. Stat. § 480A.08(3).

The plain language of subdivision 5 and the award of damages outside the notification period in RIO/Bill Blass support the district court's award of lost profits beyond the six month period.[2] We conclude that the district court's denial of judgment

---

[2]The legislative history presented to us is not to the contrary. During the process which led to revision of the statute to include damages, see 1991 Minn. Sess. Law Serv. Ch. 190 (H.F. 786) (WEST), Senator Bill Luther sponsored a successful amendment addressing the breadth of the damages provision. He explained that use of the general term "damages" would provide for "unrecouped investment" for example. Senator Frederic Knaak responded that he understood the sponsor to be seeking to prevent limitations on "consequential damages". (Transcribed excerpts from the floor hearing included in Wingert's Appendix, to which Paramount has not objected.)

notwithstanding the verdict on this claim was not erroneous and that Paramount is not entitled to a new trial.

Paramount also challenges four evidentiary rulings and asserts that the district court should have granted its motions to amend its answer and amend the judgment or grant a new trial. We review decisions about the admissibility of evidence and the denial of permission to amend for abuse of discretion. See Lampkins v. Thompson, 337 F.3d 1009, 1012 (8th Cir. 2003); Norbeck v. Davenport Community School Dist., 545 F.2d 63, 70 (8th Cir. 1976).

Paramount argues that the district court erred to its prejudice by denying it leave to amend its answer despite Wingert's delay in producing its noncompete agreements. Where leave of court is required to amend a pleading, see Fed. R. Civ. P. 15(e), a court may deny such leave for several reasons, including undue delay or undue prejudice to the opposing party. See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 453 (8th Cir. 1998). Paramount only moved to amend one week before trial, and the district court allowed it to cross examine Wingert's witnesses about mitigation opportunities and instructed the jury about mitigation. We conclude that the district court did not abuse its discretion by denying the amendment given Paramount's delay in seeking it. Even if there had been an abuse of discretion, the denial was harmless given Paramount's opportunities to address the issue at trial.

Paramount further alleges that the exclusion of evidence to impeach Mr. Wingert's testimony and attack his credibility was an abuse of discretion. It wanted to introduce Wingert's noncompete agreements with its agents and related matters as prior inconsistent statements to impeach his testimony about his ability to acquire a replacement line. The district court decided on the first day of trial to exclude evidence about the noncompete agreements on relevance grounds, particularly since it had not been established that Wingert had a duty to enforce such agreements to mitigate losses. Paramount asserts that the district court failed to analyze the

importance of the agreements for impeachment and instead relied on its ruling early in the trial that the agreements were not relevant. Relevance analysis applies to impeachment evidence as well, however. See Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1312 (8th Cir. 1993) (prior inconsistent statements must "pertain to a matter of sufficient relevancy"). The district court's determination that evidence about the noncompete agreements should be excluded was not an abuse of discretion.

Paramount also asserts that the district court's admission of redacted documents violated Federal Rule of Evidence 106. Under Rule 106, a party has a right to introduce another part of a document first introduced by his adversary if it "ought in fairness to be considered contemporaneously". Fed. R. Evid. 106. Paramount focuses on a settlement document generated by its lawyers which contained a brief cover letter and calculations related to sales and commissions, invoking the settlement protections of Rule 408. It complains that admission of the letter was contrary to the district court's earlier decision to exclude evidence of settlement negotiations and that the letter improperly defined an amount of damages for the jury. The district court redacted the one reference to settlement in the cover letter, and its decision that the remainder of the document was relevant and not unduly prejudicial was not an abuse of discretion.

Paramount finally argues that the district court violated Rule 106 by not allowing it to introduce the expert report prepared by Wingert's expert, Arthur Cobb. In his report Cobb calculated the lost profits on a net basis rather than the gross basis about which he testified. Since the district court permitted Paramount to question Cobb about the report, there was no prejudice. We conclude that none of the evidentiary decisions challenged by Paramount constituted an abuse of discretion and the motion to amend the judgment or grant a new trial was appropriately rejected.

Finally, we address Wingert's cross appeal challenging the grant of summary judgment on its unjust enrichment claim. The district court granted summary

judgment on this claim because Paramount's hiring of Wingert's agents did not provide a "benefit to which it was not entitled". Neither was it illegal or a breach of contract, and Wingert did not allege a quasi contract. Wingert asserts that Paramount "improperly capitalized on its failure to provide notice so that it could hire away Wingert's sales force in order to gain unfettered access to Wingert's established customer lists", thereby not having to "ramp up its own line", receiving "the knowledge and relationships with customers" built by Wingert, and saving three percent on commissions.

To assert a claim of unjust enrichment, a party must demonstrate that the other was unjustly enriched "in the sense that the term 'unjustly' could mean illegally or unlawfully." Ventura v. Titan Sports, Inc., 65 F.3d 725, 729 (8th Cir. 1995). While Paramount may have benefitted from its failure to notify Wingert of its termination as required by the Act, that unlawful benefit was addressed by the award of damages under subdivisions 4 and 5 of the statute. Hiring Wingert's agents – the alleged basis for the unjust enrichment claim – was a lawful act that was separate from the failure to notify. The fact that the hires allegedly occurred during the statutory notification period does not make them unlawful, and any connection between the failure to give the statutory notice and the hiring is too tenuous to support an unjust enrichment claim.

Because Paramount has not shown that the damages awarded violated the statute or that the evidentiary rulings were an abuse of discretion and Wingert has not shown that summary judgment was inappropriately granted on its unjust enrichment claim, we affirm the judgment of the district court.

MELLOY, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's opinion with the exception of the affirmance of the award of four-and-a-half years of lost profits to Wingert. I believe that such an award is not authorized by the Minnesota Termination of Sales Representatives Act.

-9-

The Act requires companies to provide sales representatives with 180 days' notice before terminating an agreement. If proper notice is not given, remedies are available to the sales representatives. Subdivision 4, titled "Rights upon termination," requires the payment of commissions that would have been earned during the 180-day notice period if notice had been properly given. In a different subsection, the Act lists additional remedies that can be awarded by an arbitrator. The Minnesota Supreme Court has adopted the principle that when a statute provides a new right and a corresponding remedy, that remedy is generally exclusive. Davis & Michel v. Great N. Ry. Co., 151 N.W. 128, 129 (Minn. 1915) ("[I]n those cases where a right, not existing at common law, is created by statute, and a remedy for its enforcement is also provided . . . the remedy so prescribed is generally held exclusive."); Lom v. Itasca County, 2002 WL 264658, *4 (Minn. Ct. App. Feb. 26, 2002) (citing Davis for the same proposition) (unpublished). Accordingly, we should be cautious in presuming that additional, unspecified remedies are available.

Although Wingert was serving as a sales representative, its role was similar to that of a distributor in that Wingert made its money by selling goods manufactured by another company. In Sofa Gallery, Inc. v. Stratford Co., 872 F.2d 259 (8th Cir. 1989), we held that a furniture distributor with an at-will contract with a manufacturer had no legitimate expectation of lost profits after the distribution agreement was terminated. We stated:

> We agree with the district court that Sofa Gallery is not entitled to recover its lost future profits even if Stratford did breach its duty to give reasonable notice. Sofa Gallery's business arrangement with Stratford was terminable at will and thus, as the district court correctly noted, it "had no legitimate expectation that it should profit from the Stratford line after the termination."

Id. at 263. Like the plaintiff in Sofa Gallery, Wingert would be entitled to no lost profits after termination but for the Act which provides for 180 days of commissions. Neither the Act nor the legislative history provided to us make any mention of lost profits after the statutory notice period.

In the absence of any explicit reference in the statute to lost profits, the majority supports its holding by looking to an unpublished decision of the Minnesota Court of Appeals and to subdivision 5 of the Act. I disagree with the majority's interpretation of both of these sources.

As the majority notes, in RIO/Bill Blass, the Minnesota court did award damages for a time not included in the notification period. 1998 WL 27299 at *1. However, that award was given in an entirely different context. The sales representative in RIO/Bill Blass was awarded commissions that had been earned *before* the statutory termination period. This award was a logical result as the Minnesota legislature certainly did not intend the Act to preclude sales representatives from receiving commissions to which they had a contractual right. However, an award for commissions actually earned before termination is dramatically different than an award for future profits after the statutory notice period. In this regard, it is important to note that the parties did not negotiate any fixed term for their oral contract and that the Act required Paramount to provide only 180 days' notice of termination. Thus, the award of four-and-a-half years of lost profits binds the interests of the parties far longer than the time period contemplated by their contract or the Act.

I am also not persuaded by the majority's assertion that the damages award is "supported by the plain language of the Act." In listing the remedies that can be awarded by an arbitrator, the Act lists "reinstatement of the sales representative

-11-

agreement, or damages" on a separate line from "payment of commissions due." The majority takes this to mean that all types of damages are appropriate, including the lost profits awarded here. I disagree with this interpretation for several reasons.

The majority cites <u>Cody v. Hillard</u> for the proposition that "[a] statutory provision should not be interpreted to make other provisions meaningless or superfluous." However, <u>Cody</u> also instructs that "[s]tatutes are to be interpreted as a whole . . . ." 304 F.3d at 776. A reasonable reading of the whole Act reflects the legislature's intent to provide a base level of protection for sales representatives.

If the primary concern is that we not "effectively excise" any portion of the statute, I believe the majority's interpretation causes more harm than it prevents. The majority has held that the word "damages" in subdivision 5(b)(2) entitles Wingert to lost profits for a five-year period. Since "lost commissions" are certainly a subset of "lost profits," the majority's interpretation effectively excises subdivision 5(b)(3) referencing "payment of commissions."

More importantly, an interpretation that limits damages to the statutory notice period does not render superfluous subdivision 5. If Wingert was owed commissions earned before the statutory notice period, it would be entitled to those commissions, as was the sales representative in <u>RIO/Bill Blass</u>. Additionally, if Wingert had other, viable causes of action, such as the tortious interference and breach of contract claims that were dismissed in this case, those could also result in additional damages.

Companies that terminate sales agreements must provide 180 days' notice before doing so. If they fail to provide such notice, they must provide the same level of compensation, in the form of commissions, that they would have been obligated to provide if notice had been properly given. I find no support in the statute for the interpretation that the failure to provide 180 days' notice subjects the company to potentially limitless liability in the form of future lost profits. Although four-and-a-

-12-

half years of lost profits were awarded here, the majority's interpretation of the Act could lead to future claims of lost profits for ten years, twenty years, or for the entire projected career of the sales representative.

I believe such a result is unreasonable. The Minnesota legislature has cautioned us that in "ascertaining the intention of the legislature the courts may be guided by the . . . presumption[]" that "[t]he legislature does not intend a result that is . . . unreasonable." Minn. Stat. § 645.17. In my opinion, a more reasonable interpretation of the Act limits damages resulting from violations of the Act to the 180-day period where notice was required.

For the foregoing reasons, I respectfully concur in part and dissent in part.

_____