NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0866n.06
Filed: November 29, 2006

No. 05-4454

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BEHAR SALIKO et al., | ) | |
| | ) | |
| **Petitioners,** | ) | **ON PETITION** FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO GONZALES, Attorney | ) | |
| General of the United States, | ) | |
| | ) | **O P I N I O N** |
| **Respondent.** | ) | |
| _____ | ) | |

Before: MOORE, ROGERS, and GIBSON,[*] Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Petitioners petition for review of the Board

of Immigration Appeals' ("BIA") affirmance of an immigration judge's ("IJ") determination that

Petitioners are not entitled to asylum, withholding of removal, or humanitarian asylum. After

considering each of Petitioners' claims, we conclude that the BIA's opinion is supported by

substantial evidence, and we therefore **DENY** the petition.

## I. BACKGROUND

Petitioners are a family consisting of a mother, father, and two children (collectively, "the

Salikos"), all of whom were born in and are citizens of Albania. In April 2001, Petitioner Indrita

Saliko ("Indrita") and her two children, Petitioners Kristina Saliko ("Kristina") and Anxhis Saliko

_____

[*]The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

("Anxhis"), left Albania and traveled illegally to Greece, where Petitioner Behar Saliko ("Behar"), Indrita's husband and the father of Kristina and Anxhis, joined them in July 2001. Nearly a month later, the family left Greece and traveled through Spain, Mexico, and Canada before entering the United States on September 1, 2001.

The Salikos filed applications for asylum with the Immigration and Naturalization Service ("INS")[1] on August 29, 2002.[2] The INS requested a hearing before an IJ, alleging that the Salikos were removable because they had entered the United States without being admitted by the Attorney General, in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). Behar was the lead respondent in the IJ proceeding, at which Behar and Indrita testified about Behar's membership in Albania's Democratic Party ("DP") and the resulting persecution of the family by agents of the Socialist Party ("SP") government.

Behar testified that, from 1990 to 1993, he was an active member of the DP's district "running committee," which was responsible for organizing the party and recruiting members. He left politics in 1994, upon becoming a police officer, but rejoined the DP in March 1998, after the SP came to power and fired him because of his past political associations. Behar stated that he was beaten by police at an October 1998 DP rally; while walking home from his father's ranch later that month; in November 1999, during a celebration of the anniversary of the DP's formation; in October 2000, after taking part in a DP demonstration; and in June 2001, as he attempted to ensure the

---

[1]The INS was abolished effective March 2003 by the Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135 (codified at 6 U.S.C. §§ 101 et seq.), and its responsibilities were assigned to the Department of Homeland Security ("DHS"), 6 U.S.C. § 251.

[2]Petitioners initially applied for asylum on August 20, 2002, but — for reasons unknown — their petitions were returned to them unadjudicated. They reapplied on August 29, 2002, and it is this second group of applications that is at issue in this case.

2

accurate counting of votes cast in an election.  He also testified that masked men came to his house looking for him in December 1999 but did not find him at home and that he was threatened by unknown persons in September 2000.

Indrita testified that she was present when Behar's father brought him home after the second assault by police in October 1998, whereupon she and her mother-in-law (not the village nurse, as Behar had claimed) treated his injuries.  She also recalled the visit from the masked men who came looking for Behar when he was not at home, but she testified that the incident occurred in December 1998 (not a year later, as Behar had stated).  Finally, Indrita stated that she had been present when Behar came home after being beaten by police during the June 2001 election, but, when reminded of her previous testimony that she and the children had left Albania in April 2001 and never returned, she was unable to explain the inconsistency.

In addition to the testimony of Behar and Indrita, the Salikos offered documentary evidence to the effect that Behar was a member of the DP, that he was fired from his job as a police officer because of his political leanings, that his uncle was martyred for supporting the democratic movement, and that Behar was hospitalized after the June 2001 beating.  The IJ noted, however, that none of these documents was authenticated and that many were handwritten and untranslated. Moreover, one of the documents purported to show that Behar had been in the hospital on June 25, 2001, a date on which, Behar insisted in his testimony, he was in police custody.

At the conclusion of the hearing, the IJ denied the Salikos' applications for asylum, withholding of removal, and humanitarian asylum, finding that the inconsistencies among their written applications and oral testimony precluded a finding that they were credible and, further, that they had not shown any reason for their failure to apply for asylum in any of the three signatory

countries to the United Nations Protocol on Refugees (Greece, Spain, and Canada) through which they traveled on their way to the United States. The IJ also found that the applications for asylum were frivolous, rendering the Salikos permanently ineligible for asylum in the United States. The Salikos timely appealed to the BIA, which reversed the IJ's finding of frivolousness and several of her factual findings but sustained the denial of relief, finding that the IJ's adverse credibility finding was supported by substantial evidence in the record. The Salikos then petitioned this court for review.

## II. ANALYSIS

### A. Standard of Review

We have recently observed that:

> Two distinct standards govern our review of removal decisions by the BIA. We generally review questions of law de novo, but defer to the BIA's reasonable interpretations of the INA. On the other hand, the factual findings of the IJ are reviewed under the substantial-evidence standard, and we will not reverse those findings unless any reasonable adjudicator would be compelled to conclude to the contrary.

*Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006) (internal quotation marks omitted).

### B. The Denial of Asylum

The decision whether or not to grant asylum lies within the discretion of the Attorney General. 8 U.S.C. § 1158(b)(1)(A). "Disposition of an application for asylum requires a two-step inquiry: first whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)).

4

A refugee is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable and unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

"Under the INA, an applicant for asylum bears the burden of demonstrating that 'persecution is a reasonable possibility should he be returned to his country of origin.'" *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005) (quoting *Perkovic*, 33 F.3d at 620 (internal quotation omitted)). The applicant must "present *specific* facts through objective evidence if possible, or through his or her own persuasive, credible testimony, showing actual persecution or detailing some other good reason to fear persecution on one of the specified grounds." *Youkhanna v. INS*, 749 F.2d 360, 362 (6th Cir. 1984) (emphasis in original; internal quotation marks omitted).

In this case, the Salikos have attempted to demonstrate their refugee status — and thus their eligibility for asylum — by showing past persecution. The BIA found, however, that the IJ's adverse credibility finding was properly based upon discrepancies among Behar's asylum application and Behar's and Indrita's testimony concerning three instances of alleged past persecution. First, Behar's application stated that he was beaten by police at a political protest on September 20, 1998, but Behar testified before the IJ that the beating occurred on October 20, 1998. Second, although Behar's application indicated that masked men visited his home and demanded to know his whereabouts sometime in December 2000, he testified on direct examination that this incident occurred in December 1999, then changed the date back to 2000 during cross-examination. Indrita

5

later testified that the event occurred in December 1998. Finally, Behar testified on direct examination that he was detained by police after a demonstration on October 16, 2000 and taken to a police station where he was once again beaten. On cross-examination, however, he stated that this beating did not take place at the police station but was instead administered on the way there. This internally contradictory testimony further conflicts with Behar's written asylum application, which states that he was arrested not on October 16, 2000 but rather on October 24, 2000. Moreover, contrary to his statement during cross-examination that the detention lasted only about one hour, his application asserts that he was held for forty-eight hours.

The Salikos argue in their brief that the discrepancies relied upon by the IJ and the BIA are "minor" and "insubstantial" and do not "go to the heart of" their claim of persecution, and they cite case law to the effect that an adverse credibility determination cannot be based solely upon an alien's failure to include in his asylum application each and every detail supporting his claim. None of the cases cited by the Salikos, however, supports their claim. In *Liti*, 411 F.3d at 638-39; *Pergega v. Gonzales*, 417 F.3d 623, 628-29 (6th Cir. 2005); *Mece v. Gonzales*, 415 F.3d 562, 572-75 (6th Cir. 2005); and *Secaida-Rosales v. INS*, 331 F.3d 297, 309-12 (2d Cir. 2003), the BIA was incorrect in finding that the applicants' evidence contained significant internal inconsistencies. In *Vasha v. Gonzales*, 410 F.3d 863, 870 (6th Cir. 2005), we actually rejected the petitioner's challenge to the BIA's finding that the applicant's testimony was inconsistent in ways that went to the heart of his claim.

The Salikos next cite various cases involving claims of persecution specifically involving the Albanian government, but each of these cases is also distinguishable. *See Gilaj v. Gonzales*, 408 F.3d 275, 285-86 (6th Cir. 2005) (involving an appeal of the IJ's finding that undisputed events did

not rise to the level of persecution); *Gjerazi v. Gonzales*, 435 F.3d 800, 809-13 (7th Cir. 2006) (reversing an IJ's adverse credibility determination based upon an applicant's failure to provide corroborating documents, where "[t]he IJ agreed that Gjerazi's account of his alleged political persecution was plausible and supported by independent state department reports" and that "[Gjerazi] and his family [had] testified consistently with their written applications for Asylum"); *Shtaro v. Gonzales*, 435 F.3d 711, 715-17 (7th Cir. 2006) (holding that the IJ erred in finding that the applicant's testimony was undermined by a non-contradictory State Department country profile, by the applicant's failure to tell her employer that she had been raped, and by documents the contents of which the IJ found, for unspecified reasons, to be implausible); *Caushi v. Attorney Gen.*, 436 F.3d 220, 226-30 (3d Cir. 2006) (holding that the IJ erred in finding the applicant's evidence incredible without considering the applicant's explanations for omissions and without specifying which answers given by the applicant's sister undermined her credibility); *Halo v. Gonzales*, 419 F.3d 15, 18 (1st Cir. 2005) (reversing a decision in which the BIA assumed that the applicant was credible but then "wrote, without explanation, that he had not made a showing of persecution sufficient to justify relief"); *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005) ("The BIA accepted Voci's testimony as credible, and yet determined that Voci had not shown that he experienced past persecution in Albania. The BIA's opinion does not explain how the BIA reached this result."). The instant case differs from those cited above in that (1) the IJ in this case specified which inconsistencies underlay her adverse credibility finding; (2) the Salikos do not dispute the existence of those inconsistencies; and (3) the inconsistencies concern the very events alleged to constitute past persecution.

The Salikos also argue that, "in the context of the rampant score-settling, police corruption and abuse, and the lack of legal redress in Albania, it is clear that the Salikos have a reasonable fear of future persecution because of Mr. Saliko's political opinion and activities." Pet'rs Br. at 21. "[T]he existence of a generalized or random possibility of persecution in [an applicant's] native country" is, however, "generally insufficient to establish persecution." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006) (internal quotation marks omitted). That is precisely why an applicant's credibility matters: because his or her testimony is often the only link between such generalized information and the likelihood of individual persecution.

The Salikos' testimony is internally contradictory and inconsistent with their applications for asylum with respect to allegations that are central to their claims of persecution. While it is possible that an applicant for asylum might forget or misremember the dates of a few incidents among many, the BIA correctly concluded that, in this case, "the discrepancies are too pervasive to ignore." BIA Decision at 2. Moreover, Petitioners' willingness to offer specific dates, both in their written applications and at the hearing, itself casts doubt on their credibility in light of their obvious uncertainty about those dates. Accordingly, we conclude that the BIA's denial of asylum is supported by substantial evidence.

## C. The Denial of Withholding of Removal

In *Almuhtaseb*, we held that:

> There are two provisions under which an alien can request withholding of removal: § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), or the CAT [Convention Against Torture]. The INA withholding of removal provision . . . prohibit[s] the deportation or removal of anyone whose life or freedom would be threatened in his or her home country on account of one of the same five grounds necessary for asylum (race, religion, nationality, membership in a particular social group, or political opinion). To prevail on a petition for withholding of removal under the INA, an alien

8

must show that there is a clear probability, that is, that it is more likely than not, that she would be subject to persecution on the basis of one of these five grounds were she removed from this country.

453 F.3d at 749 (internal quotation marks and citations omitted). When "substantial evidence supports the Board's determination that [an alien] is ineligible for asylum, it therefore follows that he cannot satisfy the more stringent standard for withholding of deportation [under the INA]." *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001), *quoted in Selami v. Gonzales*, 423 F.3d 621, 627 n.2 (6th Cir. 2005).

Similarly, "[t]he burden of proof is on the applicant for withholding of removal under [the CAT] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). An applicant who cannot establish eligibility for asylum "also cannot meet the heightened requirements for relief under [the] CAT," *Liti*, 411 F.3d at 641. We therefore reject the Salikos' request for relief from the BIA's denial of withholding of removal under the INA and/or the CAT.

## D. The Denial of Humanitarian Asylum

Petitioners also request humanitarian asylum, which

may be granted . . ., in the exercise of the decision-maker's discretion, if:
    (A)   The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of . . . past persecution; or
    (B)   The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

8 C.F.R. § 1208.13(b)(1)(iii).[3]

---

[3]Both parties to this case have treated Petitioners' claims for asylum and for humanitarian asylum as discrete from one another. That approach is consistent with our opinion in *Liti*, 411 F.3d at 636-39, 641-42, and we adopt it here.

Section 1208.13(b)(1) requires that an applicant "establish that he or she has suffered persecution in the past in the applicant's country of nationality." At oral argument, the Salikos conceded that past persecution is a precondition of a grant of humanitarian asylum under § 1208.13(b)(1)(iii). *See also In re Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989) (internal citation omitted) ("[T]he favorable exercise of discretion is warranted for humanitarian reasons even if there is little likelihood of future persecution. . . . Victims of past persecution should in some cases be treated as refugees or asylees even when the likelihood of future persecution may not be great . . . ."). Because they have not established past persecution, therefore, the Salikos are plainly not entitled to the extraordinary relief contemplated by § 1208.13(b)(1)(iii).

### III. CONCLUSION

For the foregoing reasons, we **DENY** review of the BIA's order.

**ROGERS, J., concurring.** I concur in the result and in the majority opinion except for Part D. 8 C.F.R. § 1208.13(b)(1)(iii) does not create a separate claim for relief from removal called "humanitarian asylum" that is distinct from "asylum." Rather, this provision constitutes part of the regulatory scheme for determining whether an alien should be granted asylum. The regulations provide generally that someone claiming refugee status based on past persecution can nevertheless be denied asylum either because of changed country conditions eliminating a well-founded fear of future persecution or the possibility of internal relocation within the country allowing the applicant to avoid future persecution. 8 C.F.R. § 1208.13(b)(1)(i)(A). Section 1208.13(b)(1)(iii) provides that in cases of particularly severe prior persecution, or where the applicant would face "other serious harm" if he were forced to return to his country, changed country conditions or the possibility of relocation may not preclude a grant of asylum. 8 C.F.R. § 1208.13(b)(1)(iii); *see also Liti v. Gonzales*, 411 F.3d 631, 641-42 (6th Cir. 2005); *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005). Because 8 C.F.R. § 1208.13(b)(1)(iii) does not even come into play where there is not sufficient evidence of prior persecution in the first place, it was not incumbent on the BIA to address the applicability of the regulation.