# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1634

_____

Roger William Bannister,    *
                            *
            Appellee,       *
                            *       Appeal from the United States
     v.                     *       District Court for the
                            *       District of Minnesota.
Bemis Company, Inc.,        *
                            *       [PUBLISHED]
            Appellant.      *

_____

Submitted:  November 14, 2008
    Filed:  February 25, 2009

_____

Before MURPHY, HANSEN, and RILEY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Bemis Company, Inc. (Bemis) appeals from the district court's[1] summary judgment order awarding Roger Bannister $81,051.36 based on Bemis's breach of a Confidentiality and Non-Competitive Agreement. Having carefully reviewed the record, we affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Roger Bannister was the Director of Technical and Product Development for Bemis, where he had worked since 1991. Bannister entered into a Confidentiality and Non-Competitive Agreement (NCA) with Bemis in December 2000, which, among other things, prohibited Bannister from working for a Bemis competitor for 18 months following the termination of his employment. In the event that Bannister's employment ended with Bemis and he was "unable to obtain employment consistent with [his] abilities and education solely because of the provisions of paragraph c. [of the NCA which prohibited his employment with a "Conflicting Organization"], such provisions . . . continue[d] to bind [him] only as long as Bemis, in its sole discretion, . . . ma[d]e payments to [him] equal to [his] monthly base salary at the time of [his] termination . . . ." (Appellant's Add. at 15, NCA ¶ d.) Paragraph d. of the NCA further required Bannister to provide Bemis with a detailed written account of his "good faith and aggressive effort[s]" to obtain employment as well as a sworn statement that although he had made a good faith and aggressive job search, the NCA was the sole reason for his unemployment. For any month in which Bannister failed to provide the required documentation, Bemis was relieved of making the monthly payment.

In March 2004, Bannister requested that Bemis release him from the noncompetition provisions of the NCA so that he could accept a position with Mondi Packaging (Mondi), one of Bemis's competitors, but Bemis refused to release Bannister. Around the same time, Bemis filed suit against Mondi and two former Bemis employees who had accepted positions with Mondi alleging the misappropriation of trade secrets and the disclosure of confidential information. Mondi and Bemis eventually settled the lawsuit and entered into an agreement in October 2004 under which Mondi agreed, for a period of 18 months from the date of the settlement agreement, not to hire any Bemis employees who were then or who became subject to a noncompetition agreement. In December 2004, Bemis offered

Bannister a severance package of $40,000 and a release from the noncompetition provisions of the NCA except as it related to Mondi. This time, Bannister declined. Bemis terminated Bannister's employment on January 14, 2005.

On February 17, 2005, Bannister's counsel sent a letter to Bemis requesting payment of his monthly salary under the NCA because he was unemployed due solely to the noncompetition provisions of the NCA, attaching a February 7, 2005, letter he had received from Mondi, which informed him that Mondi "would like to extend an offer of employment to [him]" but could not because it was Mondi's understanding that Bannister was subject to a noncompetition agreement with Bemis as of October 8, 2004. (Appellant's App. at 91.) Bannister received no response from Bemis, and on March 31, 2005, Bannister sent a job contacts log to Bemis that detailed his job search through March 2005. He again requested that Bemis start paying his monthly salary under the NCA.

Bemis's counsel responded with a letter on April 14, 2005, in which it stated that "[w]ith respect to [Mondi], Bemis is simply not inclined to meet your request as [Mondi] has a separate agreement with Bemis Company in which it will not and cannot offer employment to anyone who was subject to a [NCA] at the time that agreement became effective." (Appellant's Add. at 18.) The letter continued, stating that "Bemis did and does release Mr. Bannister from paragraph d of the noncompetition portion of his Confidentiality and Noncompetitive Agreement as it relates to all other companies *other than [Mondi]*." (Id. at 19 (emphasis added).) Bannister responded by letter on April 25, 2005, that the April 14 Bemis correspondence was the first notice of his release to pursue employment with any competitor other than Mondi and that he considered the release a partial release because of the Mondi exception. Bemis then confirmed in a letter dated April 27, 2005, that Bannister could accept "employment with any company other than [Mondi,]" and reiterated its position that there were no damages due under the NCA "based on the fact that Mr. Bannister has been released to seek employment with any

-3-

company other than [Mondi]," noting that even if Bannister had been released to seek employment with Mondi, Mondi could not hire him because of the Bemis/Mondi settlement agreement. (Appellee's App. at 12-13.)

Bannister accepted a position with Bancroft Bag, Inc., a Bemis competitor, on October 24, 2005. He brought this breach of contract claim against Bemis for its failure to pay his monthly salary under the NCA for the nine-month period of January through October 2005. Both parties moved for summary judgment. The district court found the NCA to be unambiguous and granted summary judgment to Bannister, awarding him $81,051.36, which represented his salary for the entire nine-month period that he was unemployed. Bemis appeals.

II.

We review the district court's summary judgment order and its interpretation of state law *de novo*, applying the same standards applied by the district court. STL 300 N. 4th, LLC v. Value St. Louis Assocs., L.P., 540 F.3d 788, 792 (8th Cir. 2008). "Summary judgment is appropriate if the record shows no genuine issue of material fact, entitling the moving party to a judgment as a matter of law." Corn Plus Co-op. v. Cont'l Cas. Co., 516 F.3d 674, 678 (8th Cir. 2008). We apply Arkansas law to this diversity contract case based on the contract's choice-of-law clause. "Under Arkansas law, the determination [of] whether a contract is ambiguous is a question of law" for the court. Jet Asphalt & Rock Co. v. Angelo Iafrate Constr., LLC, 431 F.3d 613, 616 (8th Cir. 2005).

We agree with the district court that the provisions of the NCA are clear and unambiguous. The NCA unambiguously provides that Bemis had the sole discretion to determine whether to enforce the noncompetition covenants by choosing to pay or not to pay Bannister his monthly salary. If Bemis chose to enforce the provisions, Bannister could not accept employment with a Bemis competitor, and he was required

-4-

to provide Bemis with a detailed written account of his efforts to locate employment along with a sworn statement that he was unemployed solely because of the NCA before he was entitled to receive his base monthly salary. The corollary to Bemis's discretion as to whether to enforce the noncompetition provisions is that if Bemis did choose to enforce the provisions, then Bemis was required to pay Bannister his monthly salary as long as Bannister met the prerequisites contained in the NCA.

The underlying facts are not in dispute; it is only the operative effect of those facts on the NCA about which the parties disagree. It is clear from the language of the correspondence between Bemis and Bannister that Bemis did not grant Bannister a full release from the noncompetition provisions of the NCA. Bemis stated in its April 14 letter that it "did and does release Mr. Bannister from paragraph d . . . as it relates to all other companies *other than [Mondi]*" (Appellant's Add. at 19 (emphasis added)), and it reiterated in its April 27 letter that "Mr. Bannister has been released to seek employment with any company other than [Mondi]" (Appellee's App. at 12). Although Bemis raised the settlement agreement with Mondi in its attempt to preclude Bannister from accepting employment with Mondi,[2] Bemis explicitly asserted its rights under the NCA when it told Bannister that he was not released from the NCA as it related to Mondi. To the extent that the Mondi settlement is relevant, the only reason it prevented Mondi from hiring Bannister is because of Bannister's NCA with Bemis. Thus, even considering the settlement agreement, the NCA was still the sole cause of Bannister's inability to be hired by Mondi. Because the NCA does not provide for a partial release, once Bannister provided the required documentation and sought payment from Bemis under the NCA and Bemis chose to enforce the NCA as it related to Mondi, Bemis was obligated to pay Bannister his monthly salary.

_____

[2]In fact, Bemis had no power to exert over Bannister based on the Mondi settlement itself. If Mondi chose to hire Bannister in violation of the settlement agreement, Bemis's recourse would have been against Mondi, the party to the settlement agreement, not Bannister, a nonparty, as Bemis acknowledged during oral argument.

We reject Bemis's attempt to rely on Bannister's alleged failure to meet the conditions precedent before being entitled to his monthly salary under the NCA. Bannister informed Bemis on February 17, 2005, that he would be employed by Mondi but for the NCA, and he demanded payment of his monthly salary under the NCA. Bannister then forwarded the required documentation on March 31 concerning his job search, as well as the affidavit required by the NCA stating that he was unemployed due solely to the NCA. Bannister requested that Bemis identify any deficiencies it found in the submitted documentation. Bemis responded on April 14 that "[w]ith respect to [Mondi], [it] simply was not inclined to meet [Bannister's] request," (Appellant's Add. at 18), and informed Bannister that he was released from the NCA as to all other employers. Bemis reiterated on April 27 that it was refusing to pay Bannister under the NCA because it had released Bannister "to seek employment with any company other than [Mondi]," (Appellee's App. at 12), not because Bemis found Bannister's submitted documents inadequate. The NCA required Bannister to "give Bemis a detailed written account of [his] efforts to obtain employment and . . . a sworn statement by [him] that although [he] conscientiously sought employment and made a good faith and aggressive effort to obtain employment consistent with [his] abilities and education, [he] was unable to obtain it solely because of the provisions" of the NCA. (Appellant's Add. at 15.) Bannister provided the required documentation: a detailed written account and an affidavit with the required statements. Bannister met the conditions precedent contained in the NCA.

We also reject Bemis's argument that Bannister is entitled at most to only one month's salary because he met the monthly conditions precedent required by the NCA on only one occasion. After Bannister provided the required documentation, Bemis informed him of its position that he was "not entitled to any payments under the agreement" based on its assertion that Bannister had been released from the NCA. (Appellee's App. at 12.) Bemis failed to perform under the NCA when it elected to enforce the noncompetition provisions at least as to Mondi but refused to pay Bannister under the NCA after he submitted the required documentation. Under

Arkansas law, "the failure of one party to perform its contractual obligations releases the other party from its obligations. The party who first breaches a contract is in no position to take advantage of a later breach by the other party." Stocker v. Hall, 602 S.W.2d 662, 664-65 (Ark. 1980) (internal citations omitted); see also Restatement (Second) of Contracts § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."). Just as a builder who contracts to build a house in exchange for installment payments is excused from further construction as long as the buyer fails to make an installment payment, see Restatement (Second) of Contracts § 237, cmt. a, illus. 1, Bannister was not required to continue to submit monthly documentation of his job search as long as Bemis refused to pay him under the NCA.

Finally, we agree with the district court that Bannister was entitled to damages for the entire nine-month period that he was unemployed. Bannister originally made demand for payment of his monthly salary on February 17, one month after his termination, and he provided the required documentation for the period beginning with the date of his unemployment. Thus, Bemis's duty to pay Bannister his monthly salary, once it elected to enforce the NCA, dates to his termination date. As for the period after Bemis's breach of the NCA, Bannister was entitled to the benefit of his bargain by being put in as good a position as he would have been in had Bemis performed the contract. See Pennington v. Rhodes, 929 S.W.2d 169, 174 (Ark. Ct. App. 1996) ("[T]he underlying purpose in awarding damages for breach of contract is to place the injured party in as good a position as he would have been had the contract been performed."); Restatement (Second) of Contracts § 347(a) & cmt. a ("Contract damages . . . are intended to give [the injured party] the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed."). If Bemis had performed its contract, it would have paid Bannister his monthly salary for up to 18 months, as long as he was unemployed due solely to the NCA. Bannister

continued to seek employment consistent with Bemis's insistence that he could accept a position with anyone except Mondi, and he documented his job search efforts. Although Bemis's breach relieved Bannister of his obligation to meet the monthly documentation conditions required by the NCA, he was still obligated to attempt to mitigate his damages. See Marshall Sch. Dist. v. Hill, 939 S.W.2d 319, 322 (Ark. Ct. App. 1997) ("Mr. Hill had a duty to take reasonable steps to mitigate the damages, and he did so by seeking and finding other employment."). Bannister's efforts toward, and eventual success at, securing employment satisfied his obligation to mitigate his damages, and the district court appropriately awarded him damages for the nine-month period during which he was unemployed.

## III.

Bemis breached the unambiguous NCA when it chose to enforce the noncompetition provisions as they related to Mondi but refused to pay Bannister's monthly salary, and the district court appropriately awarded Bannister damages under the contract for the period he was unemployed. The district court's judgment is affirmed.

_____