# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3061

_____

|  |  |  |
|---|---|---|
| Andrea Anderson, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| | * | [PUBLISHED] |
| Family Dollar Stores of Arkansas, | * | |
| Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 16, 2009
Filed: September 1, 2009

_____

Before LOKEN, Chief Judge, HANSEN and COLLOTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

Andrea Anderson ("Anderson") appeals the district court's[1] grant of summary judgment to her former employer, Family Dollar Stores of Arkansas, Inc. ("Family Dollar"), in this employment discrimination suit. In this summary judgment context,

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

we view the facts and reasonable inferences in the light most favorable to Anderson, the nonmoving party, see Hansen v. Qwest Commc'ns, 564 F.3d 919, 923 (8th Cir. 2009), and apply the same standards as the district court, see Bannister v. Bemis Co., 556 F.3d 882, 884 (8th Cir. 2009).  We affirm.

Family Dollar hired Anderson as a manager trainee at its store in Hardy, Arkansas, on May 30, 2006.  The manager at the store, Sherry Smith, terminated Anderson after one day.  Anderson complained to the Human Resources Department for Family Dollar and spoke with a regional manager, who arranged an interview for Anderson with Drew White ("White"), the district manager.  Anderson complains that she was uncomfortable during the interview because White's conversation was personal, talking about her hair, her eyes, her marital status, and that his wife was sick. She recalled that Sherry Smith had commented that if you are nice to White, he will be nice to you.

White rehired Anderson and placed her in a five-week training program, supervised by Debbie Crow.  During her training period, Anderson had contact with White once a week for a one-hour testing period.  On those occasions, Anderson states that White would rub her shoulders, back or hand until she asked him to stop, he once cupped her chin in his hand, and he acted in what she described as a "flirtatious" manner. (J.A. at 192.)  At one point he said to her, "You know, how far do you want to go in this company, because it's me that makes you be here anyway. . . I can make or break you." (Id. at 201.)  She said he never overtly asked to sleep with her, but she "was kind of waiting for him to say it," (id.) and she believed him to mean that if she engaged in sex with him, she would make more progress in the company.

After Anderson completed her training period, White assigned her to be the manager at the Family Dollar store in Hardy.  Anderson reported to White when she had problems at the store with cash registers, discrepancies in the books, and difficulties with employees.  During her first week as manager, Anderson made

several telephone calls to White with these job-related complaints. He told her she should be where he was–in a motel room in Florida; he said, "you ought to be right here in bed with me with a Mai Tai and kicking up." (Id. at 215.) On another occasion when she called him with complaints about her employees and scheduling problems, he told her, "I'll deal with it, baby doll." (Id. at 217.) Anderson complained that she thought he once called her "honey" (id. at 218) and that her coworkers had conspired to get her fired by sabotaging the cash registers, refusing to unload trucks, and pouring soda in her gas tank.

On July 29, 2006, White came to the store, and Anderson told him in person of her problems with employees, security at the store, and her job responsibilities. Additionally, because her back was sore after unloading a heavy truckload herself that day, she mentioned to White that they also needed to do paperwork regarding her back. At that point, Anderson said that White grabbed her arm, pulled her back to the storeroom, pushed her once, and in a mean tone asked, "Are you going to work with me? Are you going to be nice? Are you going to fit into my group? . . . [N]ow you're telling me your back is hurt? . . . [Y]ou're just nothing but trouble." (Id. at 233-34.) He concluded with, "You're just not going to be one of my girls, are you?" (Id. at 234.) He then terminated her employment.

During her employment, Anderson did not report any harassment to Human Resources, though she clearly understood the reporting procedure for employment complaints and used it following her first termination by Sherry Smith. After White terminated her employment, Anderson sent an e-mail to Human Resources and a lengthy complaint to the Regional Loss Prevention Department, detailing her complaints about the store where she worked, but she never mentioned any inappropriate sexual behavior by White.

Anderson first mentioned complaints of sexual harassment when she filed charges with the Equal Employment Opportunity Commission. She obtained a right

to sue letter and commenced this suit under Title VII, 42 U.S.C. § 2000e-2(a)(1); and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107; alleging sexual harassment in the form of a hostile work environment and actual quid pro quo sexual harassment, and a state law claim for the tort of outrage. The district court granted summary judgment to Family Dollar, concluding that Anderson's factual allegations, though involving conduct she considered offensive, were not shown to be based on her sex and were not so severe as to alter a term, condition, or privilege of her employment. The court held that any claim based upon coworker harassment also failed because those complaints were unrelated to her race, color, religion, sex, or national origin. As to the quid pro quo sexual harassment claim, the district court concluded that Anderson presented no evidence to indicate that any sexual behavior was a condition of her employment. Finally, the district court concluded that the state tort claim failed because the conduct underlying Anderson's claim was not so outrageous or extreme "as to go beyond all possible bounds of decency," citing M.B.M. Co. v. Counce, 596 S.W.2d 681, 687 (Ark. 1980). The district court also denied Anderson's motion to alter the judgment. Fed. R. Civ. P. 59(e).

Anderson argues on appeal that the district court erred in granting summary judgment to Family Dollar and in denying her Rule 59(e) motion to alter the judgment. We apply de novo review to the district court's summary judgment ruling. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Hansen, 564 F.3d at 923. We review the district court's rulings under Rule 59(e) for an abuse of discretion. Wingert & Assocs., Inc. v. Paramount Apparel Int'l, Inc., 458 F.3d 740, 743 (8th Cir. 2006). Title VII and the Arkansas Civil Rights Act are governed by the same standards. See McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 860 (8th Cir. 2009). Title VII and the Arkansas Civil Rights Act make it unlawful for an employer to discriminate against an individual with respect to any terms of

employment on the basis of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); Ark. Code Ann. § 16-123-107.

Anderson contends that she established a prima facie case of sex discrimination based upon a hostile work environment and quid pro quo harassment, but our review of the record as a whole finds no support for her argument. To set forth a prima facie case of a hostile work environment, Anderson must demonstrate "(1) that [she] is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition or privilege of her employment." Henthorn v. Capitol Commc'ns, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004) (citing Duncan v. Gen. Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002)). "To be actionable under Title VII, the work environment must have been both objectively and subjectively offensive." Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 759 (8th Cir. 2004). An objectively offensive environment is one that a reasonable person would find hostile or abusive, examining all of the circumstances, such as "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct [is so severe or pervasive that it] unreasonably interfered with the employee's work performance." Id.

Here, even assuming Anderson's evidence raises an inference that the harassment by her supervisor, White, was based on her sex, it was not "sufficiently severe or pervasive" to "affect[] a term, condition, or privilege" of her employment and to "create an abusive working environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986) (internal marks omitted). White's conduct of rubbing Anderson's shoulders or back at times during her training session, calling Anderson "baby doll" during a telephone conversation (J.A. at 217), accusing her of not wanting to be "one of my girls" (id. at 234), his one-time, long-distance suggestion that she should be in bed with him and a Mai Tai in Florida, and the insinuation that she could go farther in the company if she got along with him, "simply were not severe, pervasive or

demeaning enough to have altered a term, condition, or privilege of her employment." See Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 788 (8th Cir. 2007); see also Henthorn, 359 F.3d at 1027 (holding repeated requests for dates and late night phone calls by the station manager that made a subordinate uncomfortable were immature and unprofessional but not actionable under Title VII); Erenberg v. Methodist Hosp., 357 F.3d 787, 792-93 (8th Cir. 2004) (holding back rubs and sexual jokes in the workplace in the moderate amounts alleged were not actionable as sexual harassment). But cf. Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 761-62 (8th Cir. 1998) (holding a borderline prima facie case was made where a supervisor had asked the plaintiff about a coworker's penis size, told the plaintiff she looked better than other women in her uniform, and often told her she smelled good, patted her on the back, or brushed up against her during the plaintiff's 2 ½ years of employment). While White's ungentlemanly conduct was decidedly inappropriate, "Title VII does not prohibit all verbal or physical harassment in the workplace and is not a general civility code for the American workplace." See Hervey v. County of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008) (internal marks omitted), cert. denied, 129 S. Ct. 1003 (2009).

Additionally, Anderson's allegation of coworker harassment and her assertion that she was discharged for reporting management discrepancies in accounting procedures or shortages in the cash register, both fail to make out a case of harassment on the basis of gender, because there is no evidence from which to infer that the alleged offensive behavior was related to Anderson's gender. Likewise, Anderson's assertion that the district court failed to consider conflicting testimony about disputes and variances in the store's gross income receipts does not require reversal because that testimony was irrelevant to her claim of sexual harassment. See Excel Corp. v. Bosley, 165 F.3d 635, 641 (8th Cir. 1999) (Loken, J., concurring) (stating Title VII should not be "unwittingly expanded to impose liability on employers for condoning or not remedying offensive co-worker conduct that does not amount to discrimination 'because of . . . sex'").

"Sexual harassment is quid pro quo if a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands." Henthorn, 359 F.3d at 1026-27. "The terms *quid pro quo* and hostile work environment are helpful, perhaps in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751 (1998); see also Henthorn, 359 F.3d at 1026 (noting that "a claim of quid pro quo harassment often adds little to a straightforward Title VII analysis"). A plaintiff making a quid pro quo claim need not prove that the conduct was severe or pervasive, "because any carried-out threat is itself deemed an actionable change in the terms or conditions of employment." Henthorn, 359 F.3d at 1027. Thus, if the "plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands," the employment decision "is a change in the terms and conditions of employment that is actionable under Title VII." Ellerth, 524 U.S. at 753-54.

Anderson suffered no adverse tangible employment action taken as a result of her refusal to submit to an implied (on White's part) or inferred (by Anderson) demand for sexual favors. White's statement during training that he could make or break her, which Anderson construed to mean she would progress farther in the company if she tolerated his conduct, even if construed to be a demand for sexual favors, was not followed by an adverse tangible employment action. Instead, White subsequently hired her to manage the Hardy store, which was a promotion from Anderson's position as manager trainee.

The only other statement offered as evidence of quid pro quo harassment is White's comment during Anderson's first week as manager that she should be in bed with him in Florida with a Mai Tai, which Anderson construed as a literal invitation to join him in bed despite the fact that he was in Florida and she was in Arkansas. Her assertion that she believed White was demanding a sexual favor and that he later terminated her for not consenting is not a reasonable inference on this record.

Anderson's only contacts with White during her time as manager were her first and last days on the job, with the exception of some telephone calls initiated by Anderson regarding job-related complaints. White made the "in bed with a Mai Tai" statement during one of those calls. He never repeated the "request" or made any similar statement while at work with Anderson, and there is no evidence to suggest that Anderson's termination was in any way related to that comment. See Newton v. Cadwell Labs., 156 F.3d 880, 883 (8th Cir. 1998) 49 F.3d 466, 473 (8th Cir. 1995) (finding that the adverse employment action was not related to the plaintiff's rejection of her supervisor's advances).

Finally, to the extent Anderson's appeal brief presents an argument relating to her claim based on the tort of outrage, we conclude without discussion that Anderson has not demonstrated facts sufficient to set forth a claim of outrage against Family Dollar under Arkansas law. See Rees v. Smith, 2009 Ark. 169 (2009) (stating the tort of outrage requires intentional infliction of emotional distress as a result of conduct that was "extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community" and also that "the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it").

Accordingly, we affirm the judgment of the district court.

_____