**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0126n.06
Filed: February 29, 2008

**No. 07-3023**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MIRJANA STEFANOVSKI, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| MICHAEL B. MUKASEY, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before: MOORE, GILMAN, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Mirjana Stefanovski, a native of Macedonia and a citizen of Serbia-Montenegro, seeks asylum for herself and her family based upon threats she received after she complained about her employer's alleged corruption. Because substantial evidence supports the order denying asylum, we deny the petition.

I.

Born in Tetovo, Macedonia, Stefanovski moved to what is now Serbia-Montenegro at the age of 25. She obtained dual Serbian/Macedonian citizenship, married, gave birth to a son and worked as an accountant in a small medical-plastics company in Belgrade.

Over the course of her ten years with the company, Stefanovski came to believe that its executives and directors had "turned to criminal activities" and that their corruption threatened the welfare of the workers. In early 2002, she discovered that several directors planned to pay a 20% kickback to various government officials in order to recover a 150,000 mark debt. Upon learning of the scheme, Stefanovski approached Branko Ninic (her boss) and told him that he would have to pay the kickback over the "dead bodies" of those "working in the firm." In apparent retaliation for her complaint, she cryptically claims that Ninic "practically sold [the company] to the firm Velefarm from Belgrade." Stefanovski next traveled to Macedonia to report the scheme to an affiliate of her company, but she left Macedonia "disappointed" because the directors there agreed with Ninic that the firm needed to find a way to recover its money. In April 2002, upon her return to Serbia-Montenegro, Stefanovski continued to complain about the kickback scheme to Ninic, threatening to "continue fighting for the workers" and to instigate "a work stoppage or strike in Macedonia."

After this last encounter, an "unknown person" followed Stefanovski home, grabbed her when she walked by the police station and threatened to ensure that she would "not come out alive" if she reported the kickback scheme. Although she experienced no other face-to-face confrontations, she received many telephone calls threatening her family if she did not stay quiet. In 2002, Stefanovski, with her husband Zvezdan and her son Marko, left Serbia-Montenegro, traveled through Macedonia, Budapest and Amsterdam and eventually made her way to the United States on a tourist visa.

Stefanovski applied for asylum on her own and her family's behalf. The Department of Homeland Security denied the application and initiated removal proceedings. Stefanovski and her family conceded their removability but renewed their application for asylum, sought withholding of removal and asked for relief under the Convention Against Torture. The IJ denied each of their claims, and the BIA affirmed the decision without opinion. In her petition to this court, she challenges only the denial of the application for asylum.

II.

To be eligible for asylum, an alien bears the burden of proving she is a "refugee," 8 U.S.C. § 1158(b), of proving in other words that she is "unable or unwilling to return" to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," *id.* § 1101(a)(42)(A). When the BIA adopts the IJ's opinion, we review the IJ's decision as the final agency action. *See Pascual v. Mukasey*, ___ F.3d ___, No. 06-4327, 2007 WL 4409788, at *3 (6th Cir. Dec. 19, 2007). And we must accept that agency action unless "no reasonable factfinder could fail to find the requisite fear of persecution." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 484 (1992).

The IJ refused to credit Stefanovski's testimony based on inconsistencies that went to the "crux" of her claim. In view of other flaws in Stefanovski's arguments, we need not decide whether this aspect of the IJ's decision is correct. *Compare Sylla v. I.N.S.*, 388 F.3d 924, 926 (6th Cir. 2004) ("[M]inor and irrelevant inconsistencies cannot constitute the basis for an adverse credibility

determination."), *with Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (holding that where testimony "plausibly could be viewed as incredible," we must uphold an IJ's determination that an applicant's testimony, "absent corroboration, was insufficient to meet [the] burden of proof"). The reality is that, even if we credit all of Stefanovski's testimony, her claims still face several insurmountable obstacles.

*First*, Stefanovski has not established that her mistreatment was "*on account of* race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (emphasis added); *see also Pascual*, 2007 WL 4409788, at *3–4. The asylum statute "makes motive critical," and generalized, self-serving goals of persecutors, even if those goals are political, are "inadequate to establish (and, indeed, go[] far to refute)" the existence of the requisite motivation. *Elias-Zacarias*, 502 U.S. at 482–83 (holding that abduction designed to advance the political goals of a guerilla group was not necessarily "on account of" the victim's political opinion).

*Marku v. Ashcroft*, 380 F.3d 982 (6th Cir. 2004), illustrates the problem. When the applicant refused to alter a semi-private company's balance sheet, her boss retaliated by threatening her with a revolver. *Id.* at 984. In rejecting her asylum claim, we recognized that "a number of courts have held that opposition to government corruption can constitute a political opinion under particular circumstances," but where an applicant "presents no evidence that any of her actions were ideologically motivated or that . . . her alleged persecutor[] perceived them as such," the record cannot compel a finding of asylum eligibility. *Id.* at 986–87. As was the case in *Marku*, Stefanovski

"does not claim that she ever publicly opposed corruption," *id.* at 987, and the record establishes that the motivations of the executives and directors were economic and thus "purely personal," *id.* at 988. Under these circumstances, it makes no difference that Stefanovski held a generalized opinion against corruption; the record does not compel the conclusion that anyone would "persecute [her] *because of* that political opinion, rather than" out of a desire for economic gain. *Elias-Zacarias*, 502 U.S. at 483.

Stefanovski adds that the IJ failed to recognize she had an imputed political opinion or belonged to a protected social group. But it was her burden not only to establish these criteria, but also to provide "*some* evidence . . . , direct or circumstantial," that those criteria motivated her adversaries. *Id.* She has not done so.

*Second*, the IJ reasonably found that the threats directed at Stefanovski did not amount to past persecution. To compel a finding of past persecution, applicants must establish "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (6th Cir. 1998). Her argument with her boss, her confrontation in the street with an unknown person, her suspicion that her family was being followed and the telephone calls threatening her family do not satisfy this burden.

In the absence of a finding of past persecution and in the absence of the presumption of future persecution that goes with it, *see* 8 C.F.R. § 1208.13(b)(1), Stefanovski has not presented enough

evidence to establish "a reasonable probability that [she] would be targeted for persecution upon [her] return." *Pilica*, 388 F.3d at 955 (internal quotation marks omitted). Stefanovski never aired her grievances with the police, undermining any prospect that government officials would retaliate upon her return. Stefanovski also equivocated when asked whom she feared. She testified that her boss has disappeared, and she stated, "I really don't know who would kill me." When pressed, she vaguely claimed to fear the mafia, which she defined as "any dishonest person that steals and that kills." The State Department country reports, it is true, say that Serbia-Montenegro is rife with corruption and organized crime, and some of these reports mention instances of police misconduct, and suggest that those who oppose organized crime may be subject to retaliation. But none of the reports supports, let alone compels, the conclusion that those who oppose corruption will be systematically persecuted.

*Finally*, even if Stefanovski could establish a well-founded fear of future persecution in the immediate vicinity of Belgrade, her claim would still fail because she reasonably could "avoid persecution by relocating to another part of [her] country." 8 C.F.R. § 1208.13(b)(2)(ii). Although Stefanovski vaguely alleged that the people she fears are "in [the] government," her only basis for this assertion was that her boss "has led the firm." Stefanovski still has family "in a village" in Serbia-Montenegro, and the presence of family in other parts of a country shows that it is "reasonable to expect [the applicant] to be able to [reside there] as well," *Pascual*, 2007 WL 4409788, at *6. Her testimony also shows that her reasons for fleeing the country, rather than relocating, were economic (she believed she could not find another job) and were not related to any

fear of persecution. When asked whether she could safely have relocated to another city or village in the country, she conceded she had "never even thought of that." Substantial evidence supports the IJ's finding that she "fail[ed] to demonstrate . . . that she could not relocate in Serbia-Montenegro," especially since "the alleged persecutors are not with the government."

III.

For these reasons, we deny the petition.