NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0529n.06

No. 13-3913

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jul 21, 2014

DEBORAH S. HUNT, Clerk

SHITALBEN PATEL,                    )
                                     )
          **Petitioner,**            )          ON PETITION FOR REVIEW OF
                                     )          A FINAL ORDER OF THE
v.                                   )          BOARD OF IMMIGRATION
                                     )          APPEALS
ERIC H. HOLDER, JR.,                 )
                                     )
          **Respondent.**            )          OPINION
                                     )

---

**Before:  MOORE, SUTTON, and ALARCÓN, Circuit Judges.**[*]

**KAREN NELSON MOORE, Circuit Judge.**  Shitalben Patel, a native and citizen of India, began an excavation business with her husband in 2004.  To do so, she borrowed approximately sixty or seventy lacks (roughly equivalent to $350,000) from six friends, on the condition that she pay the money back within three years and at an interest rate of 1.5%.  The business failed, and Patel was able to pay only part of the money she owed.  In 2008, after the time for repayment lapsed, Patel's creditors began threatening her.  They sent men to her home and to follow her around town, and the men warned her that she would be "unwell mentally or physically" if she did not return the money.  A.R. 106 (Hr'g Tr. at 33).  Patel testified that these threats occurred "[i]numerable times" and were "continuous" for over a year.  *Id.*  In January 2009, a group of four or five men cornered her in town and one of them slapped her.  Patel did not contact the police about any of the threats because she believed that the police would not

---

[*]The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

help her. After the slapping incident, Patel began to fear for her life, and she and her husband traveled to the United States in April 2009 on visitor's visas.

Patel's visa expired after six months, but she remained in the United States. She did not file an application for asylum at that time because "there was nobody to advise [her]." *Id.* at 113–14 (Hr'g Tr. at 40–41). After she pleaded guilty to shoplifting in April 2010, the Department of Homeland Security initiated removal proceedings against her. Patel conceded removability, but on June 22, 2010 she requested relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Patel believes that, if she returns to India now, she will be killed because her creditors have realized that she will never be able to pay them back. She does not believe that there is anywhere in India that she can go where her creditors will not be able to find her.

Patel testified regarding her fear of her creditors at a hearing before an immigration judge ("IJ"). Although the IJ found Patel credible, he denied Patel's applications for asylum, withholding of removal, and CAT protection. First, the IJ concluded that her asylum application was time-barred because she failed to file within one year of her entry into the United States, and then delayed for an unreasonable amount of time after her legal status as a non-immigrant visitor expired. *Id.* 63–64 (IJ Dec. at 16–17). Next, the IJ concluded that Patel was not entitled to withholding of removal because her past experience did "not cross the line from harassment to persecution" and she could not show that she would likely be persecuted in the future. *Id.* at 65 (IJ Dec. at 18). Moreover, even if verbal harassment and one physical altercation constitute

persecution, Patel failed to show that she was persecuted on the basis of a protected ground. Her claimed particular social group—business owners or former business owners who owe money to creditors—was neither based on an immutable characteristic nor visible to the community. *Id.* at 66 (IJ Dec. at 19). Finally, the IJ concluded that Patel failed to show that she would face torture if she returned to India. The Board of Immigration Appeals ("BIA") agreed with the IJ's reasoning and dismissed Patel's appeal.

When the BIA affirms the IJ's opinion but also provides additional explanation for the ruling, we review the opinions of both the BIA and the IJ. *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008). We review an immigration court's factual conclusions to determine if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). Under this standard, we must defer to the immigration court's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Legal conclusions are reviewed de novo. *Zoarab*, 524 F.3d at 780.

Patel's asylum application is not within our jurisdiction to review on appeal. An alien must file an application for asylum "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). A late application may be considered only "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay." *Id.* at § 1158(a)(2)(D). If the alien can demonstrate

changed or extraordinary circumstances, she must still file the application within a reasonable period of time considering those circumstances. 8 C.F.R. § 1208.4(a)(4)(ii), (5). Patel argues that, although she failed to file an application for asylum within a year of entering the United States, her delay was justified by extraordinary circumstances because she "maintained . . . lawful immigrant or nonimmigrant status . . . until a reasonable period before the filing of the asylum application." *Id.* at § 1208.4(5)(iv). The BIA approved the IJ's conclusion that, notwithstanding Patel's valid presence in the country for six months on a non-immigrant visa, her application was time-barred because she "failed to file her asylum application for nearly a year beyond the expiration date of her non-immigrant visa." A.R. at 3 (BIA Dec. at 1).

We lack jurisdiction to review an immigration court's decision that an asylum application was not timely filed. 8 U.S.C. § 1158(a)(3). Although we may review appeals that present "constitutional claims or matters of statutory construction," we may not review appeals that challenge the immigration court's factual or discretionary determinations. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Patel presents only a factual challenge to the BIA's determination.[1] She argues that her application, which was filed within one year of the

---

[1]In her reply brief, Patel for the first time frames her argument as resting on Equal Protection grounds. She argues that timely filing of her asylum application was impossible after she was served with a Notice to Appear because at that point she could apply for asylum only in open court before an IJ, and that the timeliness provisions of the immigration regulations thus discriminate against individuals who have been forced into immigration proceedings. We ordinarily refrain from entertaining on appeal an issue that is not raised in a petitioner's opening brief. Furthermore, even if we were to consider Patel's Equal Protection argument, we would reject it. "[D]istinctions made by the federal government among aliens receive only rational basis scrutiny." *Ashki v. INS*, 233 F.3d 913, 920 (6th Cir. 2000) (citing *Fiallo v. Bell*, 430 U.S. 787 (1977)). We believe that there is a rational basis motivating the statutory requirement that

4

expiration of her lawful status, was filed within a reasonable time based on her extraordinary circumstances. We do not have jurisdiction to review the reasonableness of her delay.

Although we may not review Patel's asylum claim, we may consider whether the district court's rejection of her application for withholding of removal was supported by substantial evidence. An alien seeking withholding of removal must establish "that it is more likely than not" that her "life or freedom would be threatened in that country [of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); *see INS v. Stevic*, 467 U.S. 407, 429–30 (1984). Patel cannot demonstrate that she is entitled to withholding of removal for two reasons: (1) she has not shown that she was persecuted in the past or that she has a well-founded fear of future persecution and (2) she has not identified a protected ground on which it is likely she will be persecuted.

First, Patel has not produced evidence to show that she suffered past persecution or will likely suffer future persecution. Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Moreover, even "[t]he fact of *some* physical harm may not be sufficient," though physical harm is not required in every case and "harm need not be life-threatening to constitute

---

an alien apply for asylum within a year, regardless of whether she is barred from applying for a portion of that time because she has been placed in removal proceedings. The government has a legitimate interest in dissuading potential asylum applicants from remaining in the country illegally until they are detected by federal authorities and forced into removal proceedings. Permitting a potential applicant to toll his limitations period from the point at which he is served with a Notice to Appear would undermine that interest.

persecution." *Haider v. Holder*, 595 F.3d 276, 286 (6th Cir. 2010). Patel's allegations that she was verbally harassed and followed for over a year, and that she was slapped on one occasion, do not rise to the level of persecution. *See Thapa v. Holder*, 475 F. App'x 593, 595 (6th Cir. 2012) (concluding that "unfulfilled threats" do not constitute past persecution); *Stefanovski v. Mukasey*, 267 F. App'x 438, 441 (6th Cir. 2008) (concluding that the petitioner's "suspicion that her family was being followed and the telephone calls threatening her family" do not constitute persecution); *Stenaj v. Gonzales*, 227 F. App'x 429, 433 (6th Cir. 2007) (concluding that aliens were not harassed when armed officers repeatedly visited their home late at night and threatened them with arrest, and on one occasion beat one of the petitioners).

Nor do her allegations support her belief that she will be subject to future persecution. Patel testified that she believes that she will be killed if she returns to India because "more time has gone by, and I still haven't paid, and so now [her creditors are] thinking I'm never going to repay." A.R. 115 (Hr'g Tr. at 42). However, she has not provided any evidence to support her subjective belief: none of her creditors threatened to kill her in the past, and she has offered no evidence to support her belief that her creditors would escalate their harassment if she returned. Moreover, even if she would likely be subject to persecution in Gujarat, the region where she lived before entering the United States, her claim fails if she reasonably could "avoid persecution by relocating to another part of the . . . country." 8 C.F.R. § 1208.13(b)(2)(ii). Although Patel testified that relocation would not ensure her safety because her creditors "could reach anywhere in India," A.R. 114 (Hr'g Tr. at 41), Patel's creditors were all former friends who lived in

neighboring towns to Patel's in Gujarat. Patel has not demonstrated that her creditors have national interests in a manner that would allow them to reach her if she moved away from her home region. Accordingly, the IJ's determination that Patel failed to establish either past persecution or a well-founded fear of future persecution is supported by substantial evidence.[2]

Second, Patel has not shown that she will likely be persecuted on the basis of a protected characteristic: her membership in a "particular social group" of business owners or former business owners who owe money to creditors. A social group is "a group of persons all of whom share a common, immutable characteristic. . . . Whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005) (internal quotation marks and citations omitted). Moreover, the social group "must be both particular and socially visible":

> Particularity refers to whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons. Social visibility requires that the shared characteristic of the group should generally be recognizable by others in the community. In other words, social visibility requires that the set of individuals with the shared characteristic be perceived as a group by society.

---

[2]Because Patel has not demonstrated a well-founded fear of future persecution, she likewise cannot establish that it is more likely than not that she would be tortured if she returns to the proposed country of removal. *See* 8 C.F.R. § 1208.16(c)(2). Torture occurs when "severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . at the instigation of or with the consent or acquiescence of a public official." 8 C.F.R. § 1208.18(a)(1). If Patel's unsupported belief that she will be killed if she returns to India is insufficient to constitute persecution, it is clearly insufficient to rise to the level of torture.

*Umaña-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013) (internal quotation marks and citations omitted).

Patel's alleged social group lacks both immutability and social visibility. Her debtor status is not immutable because she can change it by repaying her creditors. Although Patel lacks the resources to repay her creditors at this time, her indebtedness is not a characteristic that literally cannot be changed, nor is it one that is fundamental to Patel's identity in a way that we should not require her to change it. In addition, Patel has offered no evidence that indebted business owners are a particular group that is generally recognizable in Indian society. Patel's argument that the group is particular and socially visible because all of her neighbors are aware that she owes money to creditors is unsuccessful. Patel's neighbors may be aware of her debt, but only because she has been threatened by her creditors. This circular definition of a social group is insufficient. *See Rreshpja*, 420 F.3d at 556 ("The individuals in the [social] group must share a narrowing characteristic other than their risk of being persecuted."). Thus, we uphold the IJ's determination that Patel could not demonstrate that she would likely be persecuted on the basis of a protected ground.

For the foregoing reasons, we **DISMISS** for lack of jurisdiction Patel's petition for review with respect to her asylum claim and **DENY** her petition for review with respect to her claims for withholding of removal and relief under the Convention Against Torture.